### THE MONTCALM.

#### (District Court, D. Maine, S. D.   March 6, 1918.)

#### No. 377.

SHIPPING ⬤⧒84(3)—LIABILITY OF VESSEL—INJURY TO STEVEDORE.

 Libelant, one of a gang of stevedores engaged in loading a ship with grain, was injured by the falling of a derrick, owing to the parting of a guy rope. The derrick was furnished by the ship, and was being used in taking on board a heavy appliance used in the loading. *Held*, on the evidence, that the breaking of the rope was not due to any defect or unsoundness, but to the fact that the derrick was canted by the stevedores, which subjected the rope to an unusual strain, and that the ship was not chargeable with any negligence which rendered it liable.

In Admiralty. Suit by John Conley against the steamship Montcalm. Decree for respondent.

William A. Connellan, of Portland, Me., for libelant.

Symonds, Snow, Cook & Hutchinson, of Portland, Me., for respondent.

HALE, District Judge. The libelant, one of a gang of stevedores in the employ of Robert M. Smith, on the 25th day of March, 1916, was engaged in loading grain upon the steamship Montcalm, at one of the Grand Trunk wharves. He was injured by the falling of a derrick, due to the parting of a guy rope, while the derrick was being used by the stevedore gang in taking aboard an appliance used in loading the grain. In this suit to recover damages, he alleges that his injury resulted from the failure of the ship to exercise reasonable care in furnishing suitable ropes for the derrick. He contends that the ship undertook to provide a completed derrick, with suitable guys for the stevedores' use, but that it did provide guy ropes, which proved to be unsafe and unsuitable, and which broke when exposed to a reasonable use.

The ship contends that the derrick, with its appliances, was erected by the ship and turned over to the stevedores with their approval; that Smith, the contracting stevedore, his walking boss, and his foreman, all men of experience in the work of loading and unloading ships, received the derrick and its appliances after due examination; that the rope constituting the guy was sound and suitable for the use for which it was designed; that the injury resulted, not from any defect in it, but from a negligent use of it; that, at the time of the injury, the stevedores were using the derrick in lowering a certain gooseneck, a heavy appliance used to supplement the spout through which the grain is carried, and constructed so that by means of a

joint it can be turned in either direction to deliver the grain from the carrier to the hatch; that, in so using the derrick, the stevedores canted it from the perpendicular position in which it had been left by the ship; and that this position brought an unusual, unreasonable, and unexpected strain on one of the guys, which parted and caused the injury.

It was clearly the duty of the ship to exercise reasonable care in providing the stevedores, who were performing a service for the ship, with a safe place in which to work, and safe appliances with which to work. The testimony shows that the rope constituted a part of the appliances of the derrick furnished by the ship; that on being subjected to a certain strain it did break. This alone is, of course, not enough to charge the ship with negligence. It becomes the duty of the court to examine the proofs, to see whether the injury occurred by reason of the ship's failure to exercise reasonable care in providing suitable appliances, including the rope in question.

It appears in evidence that the rope was examined by those in charge of the ship and pronounced to be a sound rope; that it was further examined by the stevedore and his men, and no fault found with it; and that it was afterwards under their exclusive control. The rope itself is in evidence, and has been submitted to various experts, who testify that they find no open or latent defect in it. After examination of all the testimony, I cannot sustain the contention of the libelant that the guy was affected with dry rot. The portion of it which parted is in court; no sign of dry rot is found upon it; nothing which competent experts pronounce to be dry rot is shown. It appears to be sound rope; it is declared by the experts to be sound rope.

The proofs show that the derrick had been used on the day before the injury, in moving the gooseneck and its attachment; that, after the derrick was turned over to the stevedores, it was swerved from the perpendicular position in which it had been left by the ship, and was canted over No. 5 hatch; that, by being so canted, it was subjected to greater strain than was originally intended; that on the night before the injury the gooseneck was left upon the wharf, and upon the morning of March 25th the stevedores were attempting, by means of the derrick and its appliances, to lower the gooseneck from the wharf to the deck of the ship, and place it over No. 5 hatch; it was low tide; the rail of the ship was on a level with the top of the wharf; the libelant was giving the signal to the winchman, and, when such signal was given, the gooseneck, with its attachment, slid upon the deck; the winchman put on the steam, after receiving the signal from the libelant; at this time the guy parted; the evidence tends to show that the rope broke at the moment when the weight of the gooseneck was put upon it and when the winchman put on the steam. The proofs tend to the conclusion that the rope parted when it was subjected to an unusual strain. In my opinion they fail to show that it broke by reason of any fault or negligence on the part of the ship. On the other hand, they tend to the conclusion that

the derrick, with its appliances, including the rope in question, was provided by men of experience, after competent examination, was accepted by stevedores of experience, and was afterwards used exclusively by the stevedores in the work of loading grain into No. 5 hatch. It is clear that the men on the ship who examined the guy, and the stevedores who accepted and used it, believed, and had reason to believe, that it was sound and suitable for the uses for which it was intended.

Upon the whole evidence, I think, the libelant has failed to show negligence, on the part of the ship, in failing to provide suitable derrick and appliances, including the guy rope in question. Nothing is shown which seems to me sufficient to charge the ship with fault in failing to anticipate that the rope would break when subjected to reasonable strain.

In The Henry B. Fiske (D. C.) 141 Fed. 188, 191, the libelant charged that a certain patent spring rider, which supported one of the anchor chains, was defective, and that the ship was guilty of negligence in maintaining such an appliance. Judge Dodge held that, on the evidence in the case, there was no reason for believing the rider defective, and no reason, on the part of the ship, for anticipating that the rider would break when exposed to reasonable strain; his conclusion was that the rider was not unsound in such a sense as to give the libelant the right to recover. In the case at bar, I think, the libelant fails to show that the ship was negligent in providing appliances which were unsound, in such a sense as to give the libelant the right to recover damages against the ship.

It is ordered that the libel be dismissed. I think, however, it is my duty to relieve the libelant from the payment of costs. He appears to have acted in good faith in supposing he had a remedy against the ship, when in fact his remedy was against the stevedore, if, upon the evidence, he can have a remedy against any one. The ship recovers no costs against the libelant.