ATLANTIC TRANSPORT CO. v. STATE OF MARYLAND, to Use of JAKUBCZAK et al.

(Circuit Court of Appeals, Fourth Circuit. April 23, 1919.)

No. 1703.

1. MASTER AND SERVANT ⬤➪128—LIABILITY FOR DEATH OF SERVANT—NEGLIGENCE.

A stevedoring company, employed to load a ship which had the choice of using a steam winch or a spool, both furnished by the ship for lowering cargo into the holds, used the spool, which was not intended for such heavy weights, *held* liable for the death of an employé killed by the falling of a slingload, owing either to the inability of the man at the ship end of the rope to hold it or to some defect of the spool head, which, if it existed, was obvious.

2. SHIPPING ⬤➪84(3)—LIABILITY OF VESSEL—INJURIES TO STEVEDORES—APPLIANCES FOR LOADING.

A ship, under duty to furnish proper appliances for loading by a stevedore, who did so by furnishing a steam winch and spools, *held* not chargeable with negligence because it did not give instructions which to use in a particular case, but left the choice to the stevedore, which employed experienced men, and which by making an improper choice caused the death of an employé.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in admiralty by the State of Maryland, to the use of Franciszka Jakubczak and others, against the Atlantic Transport Company, the steamship Monviso, and others. From the decree, the Atlantic Transport Company appeals. Affirmed.

Guion Miller, of Baltimore, Md. (J. Kemp Bartlett, of Baltimore, Md., on the brief), for appellant.

Charles T. Cowenhoven, Jr., of New York City (Kirlin, Woolsey & Hickox, of New York City, Ritchie, Janney & Stuart, of Baltimore, Md., Robert W. Williams, of Washington, D. C., and Peyton Randolph Harris, of New York City, on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This is an appeal by the Atlantic Transport Company from a decree in admiralty of the District Court of the United States for the District of Maryland, in favor of the libelants, who sued under the death statute of the state of Maryland (Code Pub. Civ. Laws, art. 67).

The suit was brought by Franciszka Jakubczak, the widow of Stanislaw Jakubczak, deceased, on behalf of herself and her children,

to recover for the damage alleged to have been sustained by reason of the death of her husband, resulting from injuries received by him while engaged under the direction of his employer, the Atlantic Transport Company, in loading the steamship Monviso, owned by the respondent Navigazione Alta Italia, of Turin, Italy. The libel alleges that the respondents Italian State Railways and Navigazione Alta Italia are the owners of the steamship. The Italian State Railways was in fact the time charterer of the steamship Monviso, which was loading a cargo for the account of the Italian government. The respondent the Navigazione Alta Italia, owner of the steamship Monviso, appeared by its proctors.

At the trial of the case in the court below on June 24, 1918, it was stipulated in open court that the Atlantic Transport Company, the employer of the decedent, should pay to the libelants the sum of $4,000; the respondent the Navigazione Alta Italia maintaining that the Atlantic Transport Company was solely liable to the libelants, but waiving any objection to the making of a settlement and payment by the Atlantic Transport Company. The Navigazione Alta Italia reserved the right to claim and insist that the respondent the Atlantic Transport Company was solely liable.

The court then proceeded to hear the testimony produced on behalf of the Atlantic Transport Company; it being stipulated that the court should allow until September 1, 1918, for the filing in court of the depositions, a commission to take which had previously issued at the instance of the owner of the Monviso. When the respondent the Atlantic Transport Company had offered all its evidence and had completed its case, the learned judge who heard this case below decided that on the evidence then before him the stevedores were solely liable for the death of their employé, Stanislaw Jakubczak, and that it was unnecessary to hear the testimony of the witnesses for the Navigazione Alta Italia, or to await the return of the depositions from Italy before rendering a decree exonerating the owners of the Monviso. The court entered a decree in favor of the libelants for the sum of $4,000. The Atlantic Transport Company objected to the decree, and the case now comes here on appeal.

[1] This libel was brought under Lord Campbell's Act to recover for the death of Stanislaw Jakubczak, a stevedore workman employed by the Atlantic Transport Company, a stevedore company, who was injured while employed in loading dunnage mats in the hold of the steamship Monviso, on November 11, 1916, from which injuries he died shortly after. The Italian consul at Baltimore, representative of the Italian government and the charter, made the arrangements with the appellant to do the stevedore work, including the furnishing of winchmen. Under the arrangement the ship furnished the winches and tackle, and the stevedores arranged the rigging to suit themselves.

It appears that the appellant was in sole charge of loading the vessel, and further that the owners of the Monviso did not have any authority or control over the stevedores, or other employés. The holds of the vessel, except No. 2, had been loaded with grain, and the stevedores, anxious to complete the loading of the vessel, decided to put two

gangs to work at hatch No. 2; hold No. 2 being empty. Winch No. 2 was not working, and in order to work two gangs the foreman of the appellant company decided to lead two lines of tackle to No. 1 winch, which was situated on the deck of the vessel forward of hatch No. 2 and aft of the foremast.

The winch was of the usual type as to size and power installed on vessels like the Monviso. Similar winches are in use on the steamships Cerea, Princippessa Lactitia, and Soperga, other steamers of the fleet of the Navigazione Alta Italia. There is a drum in the center of the winch, and on each side a small and a large spool. The large spool on the port side of the vessel was used at the time the accident occurred. It further appears that the large spool was 17 inches in length, 18½ inches in diameter at the larger end of the spool, and 15 inches in diameter at the smaller end. The diameter of the spool at the outer rim was 3 inches greater than the diameter in the middle or smallest portion of the spool. The dimensions of the central drum do not appear. However, it is admitted that this drum was considerably larger than the spools of the winch, and was the portion of the winch designed and intended for use in loading heavy cargo. The spools of the winch were intended only for light loads, not exceeding 500 pounds. It was shown that the usual thing to do is to use the drum, it being the safest method in raising or lowering a cargo.

Therefore, there were two methods in which the winch could be operated, to wit, either by using the drum or the spools; the first being by making the fall fast to the drum of the winch. The slingload could then be raised or lowered by the winchman operating the steam levers of the winch. This is admitted to be the proper method where large weights were to be lifted. Second, by using a large spool with the rope fall, which will not make fast to the spool, the whip end being held by one of the stevedores, and several turns of the fall taken around the spool and back. To raise a slingload, the spool of the winch was revolved forward, towards the bow of the ship, winding up the fall attached to the sling, while the whip or loose end of the fall was held taut by a stevedore. To lower, this stevedore slacked away on the whip end. That method of "spooling" was adopted when desired to work two gangs, when only light loads were being used. It was the method which was tried by the stevedores at the time Jakubczak was injured, and was discarded, and the drum was used after the accident.

The tackle rigged this way had been used on the day in question to move some dunnage boards weighing 200 or 300 pounds, and had operated satisfactorily. There were a number of stevedores in the hold arranging the dunnage mats, and the first load of flour was waiting on the platform overlooking the hatch. A stage had been laid from the deck of the ship to the pier, forming an inclined plane upon which the first slingload of flour, consisting of 20 bags, weighing about a ton, had been dragged. In doing this the full weight of the slingload had not been placed upon the tackle.

It appears that the foreman of the appellant company was doubtful as to whether it was safe to use ton slingloads with the tackle rigged

in accordance with his instructions. However, he decided to give it a trial and see how it worked, and directed that the large spool be used. "Go ahead," he said to the man at the winch, "Let us try it. Go ahead; let us give this a trial." The spool of the winch commenced to revolve, the load was dragged toward the hatch coaming, and when it swung over the open hatch the full weight of the slingload fell upon the spool. According to the testimony of Jim George, a witness for the stevedores, who held the whip end of the rope, there were some five or six turns of the fall around the spool, and when the weight hit the spool two turns came off the spool, the rope ran so fast that he could see the fire come off the spool, and his hands were burned through his gloves. The witness let go the rope and the ton of flour fell into the hold.

. It appears that the workmen were busy loading dunnage mats on the floor of the hold below, and that no warning was given that the slingload of 20 bags was about to descend upon them. There was some conflict of testimony as to whether two turns of the fall slipped off over the end of the spool, or whether, as the slingload was lowered into the hold, the turns of the rope slipped around the spool so fast that the man holding the whip end was compelled to let go.

As we have stated, it was stipulated in the court below that the libelants were entitled to a decree, and the sole question submitted was whether the appellant or the appellee, Navigazione Alta Italia, as owner of the steamship Monviso, was responsible for the death, or whether they were both liable. Appellant insists that the appellee was negligent, in that he furnished a defective spool head. It is contended by counsel for appellant that it was the duty of appellee to furnish such tools and appliances as were necessary to the proper loading of the ship, and this is admitted by counsel for appellee. When appellant commenced to load the ship, it was informed by the ship's agents that it was very important to have the ship loaded as speedily as possible. Appellant insists that, upon inquiry as to appliances, it was directed by the ship's officers to use the spool heads that proved defective; that ordinarily the use of spool heads is a safe and customary practice; and it further appears that 500 pounds is an ordinary lift for a spool head. Appellant further insists that its employés on that occasion were capable and experienced men, and that, before lowering a load of flour, every reasonable precaution was taken to see that the way was clear, so as to avoid accidents.

However, appellee insists that, while it was his duty to furnish suitable appliances in good condition for the loading of the vessel and to maintain them in good condition, it performed its duty by furnishing appliances that were suitable and maintaining them in good condition. Appellee insists that appellant could have used the drum head, which it had furnished, and that it would have been a safe means of lowering the flour. Appellant's only excuse for not employing the drum head, which it admitted to be a safe method, is that appellee was exceedingly anxious to have the flour, as we have stated, loaded at the earliest possible moment.

The controversy involved herein is within a narrow compass, involving as it does, only the question as to whether the appellee failed to perform the duty required of it, to wit, to furnish safe and suitable appliances with which to load the ship. Appellant contends that the spool head was defective, in that it did not have rims at either end, so as to prevent the rope from slipping after it reached a certain point in wrapping; and this raises the question as to whether, if the spool head was really defective, the defects were such as could have been observed by appellant by the exercise of due care. The appellant insists that the only—

"actionable negligence shown is the defectively constructed spool head, and the failure of the ship's officers to notify the appellant that this spool head could only be used safely for loading 500 pounds, when such spool heads can and are ordinarily safely used for a ton or more; that this fact was known to the ship, its officers being present at the time that the stevedores were placing a load of a ton in the sling."

The court below, in commenting upon the suggestion that the ship directed the stevedores to use a spool head, said:

"He was told to use the winch, and decided to use the spool head."

It also appears from the evidence that the chief officer and master both denied that they had given any direction or suggestion whatsoever as to the use of the spool head, stating at the time that it was not their duty to do so.

[2] In this connection it should be borne in mind that appellee fulfilled its duty by furnishing proper appliances, but did not give any instructions as to the use of same. The case of Jeffries v. De Hart, 102 Fed. 765, 42 C. C. A. 615, is very much in point. There the court found that the gear which broke, causing the injury, was selected, not by the owners of the ship, but by the stevedores themselves, who relied upon their own judgment as to its fitness. The court, in referring to this phase of the question, said:

"All that the mate of the vessel, or any other agent of De Hart, really did, was to passively permit the workmen of the Cronise Company to employ such part of the vessel's tackle as they saw proper, instead of furnishing the gear which, under the agreement the ship might have been required to furnish; but of this departure from the terms of the contract Jeffries could not have complained, for he was neither a party nor privy to it. Consequently, whatever duty of care was owing to him was, under the circumstances, due by his employer, the Cronise Company, and not by the ship or its owner. If the appliances were negligently selected, those who made the selection were at fault, and not the defendant in error, who neither by himself nor by any agent of his or of the ship participated in that selection, or was under any obligation to Jeffries to direct or control it."

A careful consideration of the testimony fails to show any act of negligence on the part of those in charge of the ship. The appellant, whose business it was to load and unload ships, no doubt had had much experience in such matters. Indeed, it is shown by the testimony that the men employed were capable and experienced in such matters.

In the case of The Persian Monarch, 55 Fed. 333, 5 C. C. A. 117, the stevedore was injured by the breaking of a rope used to haul the lighter alongside the ship. It appears that in that case the rope was se-

lected by a foreman stevedore, but was unsuitable for the purpose. Judge Wallace, speaking for the Circuit Court of Appeals, Second Circuit, said:

"It was of course obligatory upon the steamship owner, as employer, to supply and maintain suitable instruments and means with which to enable the stevedores to carry on their work, and to exercise reasonable diligence to see that such appliances were at all times safe for use. It had fulfilled its general duty in that behalf; it had furnished all the requisite appliances for the various incidents of the service to be performed by the stevedores; and it is not asserted that any of these appliances were defective or unsafe for their appropriate uses. It was under no obligation of especial supervision, because the stevedores were experienced men, who knew which appliances to select and how to use them."

It being conceded that the use of the winch would have been a safe means of lowering the flour, and it further appearing that the appellant chose what proved to be a more dangerous method, clearly fixes the blame upon the appellant. If the spool head was defective, such defect, as we have stated, was open and obvious, and could have been easily discovered by the appellant in the exercise of ordinary care. The winch which had been furnished by the ship was at hand and ready for use, but with full knowledge as to the condition of the spool head the appellant chose to use the latter.

We fail to find any evidence to warrant us in finding that appellee was negligent in performing its duty. Therefore we must conclude that the accident was due to the negligence of the appellant, as found by the court below.

For the reason stated, the decree of the lower court should be affirmed.