### SABLE v. A. H. BULL & CO. et al.
### No. 82.

Circuit Court of Appeals, Second Circuit.
Nov. 17, 1941.

Abraham M. Fisch, of New York City, for plaintiff-appellant.

Andrews, Baird & Shumate, of New York City (William L. Shumate, of New York City, of counsel), for defendants-appellees.

Before SWAN, CHASE, and FRANK, Circuit Judges.

## CHASE, Circuit Judge.

The judgment from which the plaintiff has appealed followed the granting of a motion by the defendant at the close of the plaintiff's case to dismiss the complaint on the ground that there was no evidence of liability sufficient to submit to the jury. That is the sole question presented and its solution depends upon the effect to be given a bit of undisputed testimony concerning a conversation between a representative of the defendants, or of one of them, and a supervisor of the Jarka Corporation, the employer of the deceased. Federal jurisdiction is based on diversity of citizenship.

The plaintiff's intestate was killed while working as a signalman on the deck of the S. S. Dorothy, owned and operated by one or more of the defendants, which was being unloaded at the Tidewater Terminal, at Port Newark, N. J., by the Jarka Corporation as an independent contractor. The latter furnished the men for the discharging operation and also whatever equipment was necessary in addition to that of the ship which it took over and used. A part of the ship's equipment so used was a 3-ton derrick run by a winchman employed by Jarka. It was designed to haul cargo from the hold and help carry it overside and lower it for discharge on the pier or into railroad cars there. There was no evidence that the derrick was in any respect defective for such use. Its boom was, however, broken when it was put under too great a strain in an unusual operation and that let the broken end, still attached to the derrick, swing around and kill the plaintiff's intestate by striking on the side of his head.

A freight car standing on a track on the pier alongside the ship had, during the morning of the day of the accident, been loaded with scrap tin from the ship. It was then necessary to move the car out of the way and sometime between noon and one o'clock the supervisor for the Jarka Corporation, Noya, went to the office on the pier of Houston who was the representative of the ship and asked him if it were possible to get a railroad engine to move the loaded car. Houston told him he didn't think he could get a railroad engine there in time and that he (Noya) should move the car with tractors and the ship's derrick. Noya testified that he replied that he didn't like to use tractors for that purpose "due to the fact that we were abusing them so much and every time we used tractors it cost us $60. and he told me I would have to move the car, I couldn't very well tie up the ship." He also told Houston he "thought it was a little too dangerous" to use the ship's derrick to which Houston made no reply but told him the car had to be moved. When asked if Houston told him to do it the dangerous way Noya testified, "He didn't tell me to do it the dangerous way. He told me that I would have to move the car."

Noya saw no more of Houston and not long after one o'clock had three tractors, belonging to, and operated by, the Jarka Corporation, try to move the car by pushing at one end. Six of such tractors were in use in discharging the Dorothy and there were some twenty of them belonging to Jarka Corporation at the Pier but only the three used were conveniently at hand at the moment. Those three did move the car a little but needed help and it was then that Noya had a line from the boom of the derrick attached to the end of the car at which the tractors were pushing to help them in the movement. So much strain was put upon the boom when the derrick went into action that it broke and caused the death as before stated.

The trial judge was of the opinion that this evidence did not show anything more than a suggestion by Houston that the ship's derrick might be used to help move the car. There was some evidence to the effect that the Jarka Corporation usually moved a car like this only as necessary to load it. It is, however, plain that Houston insisted that Noya was bound to move the car and that Noya assented to that by undertaking its movement without any protest that it was not his duty to do it. So far as the evidence in this record shows, the Jarka Corporation was as much of an independent contractor in so doing as it was in loading the car. It was cer-

tainly free to use the derrick or not as it saw fit. It could have used more tractors had the trouble been taken to put them on the job and it could have had the deceased move out of the range of the swinging boom as a precaution against the possibility of its breaking. Houston gave no instructions as to how to use the derrick though he did suggest its use and in that sense consented to it.

But there was nothing more to this conversation in sum or substance. A competent independent contractor was merely required to perform its contract in such way as it chose. We agree with the trial judge that there was no evidence of defendants' negligence which should have been submitted to the jury and find no error in the judgment. Compare, Atlantic Transport Co. v. State of Maryland, 4 Cir., 259 F. 23; Jeffries v. DeHart, 3 Cir., 102 F. 765; The Montcalm, D.C., 249 F. 760.

Affirmed.