## STANLEY v. BECKHAM.

(Circuit Court of Appeals, Eighth Circuit.   April 23, 1907.)

No. 2,397.

1. EVIDENCE—CONVERSATION—RIGHT TO EXPLAIN, VARY, OR CONTRADICT.
　　Where the whole or part of a conversation is put in evidence by one party, the other is entitled to explain, vary, or contradict it.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 455.]

2. TRIAL—RECEPTION OF EVIDENCE—SCOPE OF REBUTTAL.
　　In an action for broker's services, defendant sought, on cross-examination of plaintiff, to prove an agreement to accept an employment and certain stock, in full for his services; but this, on objection, was excluded as not proper cross-examination, as being matter of defense. As a part of the defense, one of defendant's witnesses testified that, after the services had been rendered, plaintiff in a stated conversation, accepted as full compensation a position as salesman and defendant's agreement to carry for him, on certain terms, certain capital stock of a corporation. *Held*, that it was error, after the admission of such evidence, to refuse to permit plaintiff in rebuttal to give his version of such conversation, though plaintiff had previously in such cross-examination, testified to certain phases thereof.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 146–155.]

3. SAME—EXCLUSION OF EVIDENCE—OFFER OF PROOF—NECESSITY.
　　Where, when a witness testifies in person at the trial, and not by deposition, certain questions asked of him are in proper form, relevant, and admit of favorable answers on behalf of the party propounding them, the sustaining of an objection thereto constitutes error, though there is no offer to show the substance of the proposed testimony; no offer being required by the court.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 115–118.]

4. SAME—MISLEADING INSTRUCTIONS—BROKERS—ACTION FOR SERVICES.
　　Plaintiff was employed to get information with reference to the contemplated purchase of a grocery business for defendant, and to obtain a statement from the prospective sellers showing the volume of their business, amount of capital used, merchandise usually carried, salaries paid, profits realized, etc., but was expressly charged not to disclose his principal's name. On beginning negotiations, the sellers declined to make any statement, unless informed concerning plaintiff's principal, whereupon he disclosed defendant's name and obtained the required information, shortly after which defendant authorized the disclosure of his name, and then completed the negotiations himself, expressing satisfaction with plaintiff's efforts. *Held*, that, as applied to this evidence, in an action for plaintiff's commissions, it was error to charge that a broker, in order to show himself entitled to commissions, must faithfully carry out the instructions given by the principal, and has no right to depart substantially therefrom.

In Error to the Circuit Court of the United States for the District of Colorado.

Thomas M. Morrow (William T. Skelton, on the brief), for plaintiff in error.

Edmund F. Richardson and Horace N. Hawkins, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. This was an action by John T. Stanley to recover from James H. Beckham the reasonable value of services alleged to have been rendered by the former at the latter's request in certain preliminary negotiations resulting in his purchase of the wholesale grocery business of N. B. McCreary & Co., of Denver, Colo. The verdict and judgment were for the defendant, and the plaintiff prosecutes this writ of error.

One of the issues presented by the pleadings was whether, after the rendition of the services in question, the plaintiff had accepted, as full compensation therefor, the defendant's engagement to employ him as a salesman in the business and to carry for him $5,000 of the capital stock of a corporation to which the business was transferred. As part of his case in chief, the plaintiff, testifying in his own behalf, explained the circumstances of his alleged employment and the services rendered, and upon his cross-examination the following occurred:

"Q. Do you remember having had a conversation with him [Mr. Beckham] one night shortly after January 1st [when the purchase was consummated], or about that period, in the Albany Hotel? A. Yes, sir. Q. Did you not in that conversation ask Mr. Beckham, say to Mr. Beckham, that you had come to see him about the position which he had promised you, and that you wanted to know what he was going to do in the way of a position for you? A. No, sir. Q. Did he not in that same conversation say to you that he would give you a position? A. He sent for me to come to the hotel to see him that night. Q. And did he not on that visit state to you that he was going to give you a position in his business house? A. He told me if I wanted it, yes. Q. And you and he agreed on what you were to charge, what you were to receive for holding that position, did you not? A. Yes, sir. Q. You were to receive a commission which he guarantied to be not less than $100 a month, did you not? A. He never made any guaranty to me at all. Q. Never? A. Never, none; no. sir. Q. Who was present when this conversation occurred? A. Mr. McKnight. Q. Mr. McKnight was a gentleman who had been in business for many years with Mr. Beckham in Kansas City, had he not? A. Yes, sir. Q. You knew Mr. McKnight very well?

"Mr. Morrow (for plaintiff): We object to this as improper cross-examination. We did not go into it in any way, shape or form. It is a matter of defense.

"The Court: If it is in the case at all, I think it is a matter of defense.

"Q. I wish you to state what that conversation was that night at the Albany Hotel. (Objected to by counsel for plaintiff.)

"The Court: He may answer the question. (To which ruling of the court counsel for plaintiff then and there duly excepted.)

"Q. Didn't you say to Mr. Beckham at the time, in the presence of Mr. McKnight, that you felt amply repaid in the position which he gave you then, for everything you had done in interesting him in business in Denver? A. No, sir; I never made such a statement. Q. No such conversation as that occurred at all? A. No, sir. Q. In that conversation did not Mr. Beckham also say to you that he was going to carry $5,000 of stock for you, and that you should have that $5,000 of stock when it was paid for, and that you wouldn't have to pay for it yourself, but that it should be paid for out of the profits of the business, and that all dividends over and in excess of 6 per cent. should

be credited on the purchase price, and when it was paid for he would turn it over to you; and then did you not say that, in exchange for the position which he had given you and the opportunity to become a stockholder, you felt amply repaid, and were repaid, for everything that he had done, and that you felt extremely grateful to him for what he was doing for you? (Objected to by counsel for plaintiff, as improper cross-examination. Which objection was by the court sustained. To which ruling of the court counsel for defendant then and there duly excepted.)

"Mr. Hawkins (for defendant): So that I may not pursue that any further. I understand your honor's ruling to be that it is a part of the defense?

"The Court: Yes, sir."

As part of the defense, the defendant and Mr. McKnight testified at length respecting the conversation at the Albany Hotel; their version thereof being that the defendant then proposed, and the plaintiff accepted, as full compensation for his services, an arrangement by which he was to be made a salesman in the business and the defendant was to carry for him upon the terms indicated $5,000 of the capital stock of the corporation. Then in rebuttal the plaintiff again became a witness, and the following occurred:

"Q. Now, you heard the version of the conversation in the Albany Hotel? A. Yes, sir. Q. You can give your recollection of it.

"Mr. Hawkins: That is objected to. I asked Mr. Stanley about that.

"The Court: Omit that; he went over that yesterday fully. If there is any specific matter he failed to speak of yesterday, or any part of the conversation overlooked, you may ask him in regard to that. (To which the plaintiff excepted.)

"Q. You may state whether or not you stated to Mr. Beckham at that time that what he had done for you in giving you a position and in holding stock for you amply repaid you for any services that you had rendered? (Objected to by counsel for plaintiff, because that was gone over.) "The Court: I think that was in his statement, but he may answer this.

"A. Mr. Beckham asked me to come to the office—Q. That is not the question, did you ever make that statement to him? A. No, sir. Q. And did he state to you that he would give you this position, and that he would hold this stock for you to compensate you for your services performed for him? (Objected to for the reasons last above stated. Objection sustained. Exception allowed.)"

Error is assigned upon the rulings preventing the plaintiff from giving in rebuttal his version of the conversation mentioned, and we entertain no doubt that in this there was error, for, where the whole or part of a conversation is put in evidence by one party, the other party is entitled to explain, vary, or contradict it. Carver v. United States, 164 U. S. 694, 17 Sup. Ct. 228, 41 L. Ed. 602; Home Benefit Association v. Sargent, 142 U. S. 691, 12 Sup. Ct. 332, 35 L. Ed. 1160; Chicago City Railway Co. v. Bundy, 210 Ill. 39, 44, 71 N. E. 28; Hoggson, etc., Co. v. Sears, 60 Atl. 133, 136, 77 Conn. 587. And it is immaterial that, upon the prior cross-examination the plaintiff had been interrogated respecting some particular phases of the conversation, for, as it had not been made, and was not necessarily, part of his case in chief, he was entitled in rebuttal to give his version of it and to go into every phase of it having any tendency to show that the defendant's version was not the correct one. The rulings seem to have been made in the belief that the subject had been fully covered by the prior cross-examination, but the belief was a mistaken one according to the record, for it shows that the cross-interrogatory, "I wish you to state what that

conversation was that night at the Albany Hotel," the only one calling for the plaintiff's full version, was not answered, and also that the cross-examination was stopped by the court's ruling that it related to what, if admissible, was part of the defense. But it is said there was no offer to show the substance of the testimony proposed to be elicited by the questions propounded and excluded in rebuttal, and therefore it does not appear that their exclusion was reversible error. The premise is correct, but not the conclusion. The controlling rule, applicable where the witness testifies in person at the trial, and not by deposition, as stated by Mr. Justice Harlan, in Buckstaff v. Russell, 151 U. S. 626, 637, 14 Sup. Ct. 448, 452, 38 L. Ed. 292, is this:

"If the question is in proper form, and clearly admits of an answer relevant to the issues and favorable to the party on whose side the witness is called, it will be error to exclude it. Of course, the court, in its discretion, or on motion, may require the party, in whose behalf the question is put, to state the facts proposed to be proved by the answer; but, if that be not done, the rejection of the answer will be deemed error or not, according as the question upon its face, if proper in form, may or may not clearly admit of an answer favorable to the party in whose behalf it is propounded."

And this rule is recognized in other cases. Oriegt v. Hedden, 155 U. S. 228, 235, 15 Sup. Ct. 92, 39 L. Ed. 130; Atchison, Topeka & Santa Fé Ry. Co. v. Phipps, 60 C. C. A. 314, 316, 125 Fed. 478, 480.

As it is plain that here the questions were in proper form, were relevant to the issues, and admitted of answers favorable to the party in whose behalf they were propounded, and as a statement of what was proposed to be proved was not required by the court, there was prejudicial error in not permitting the questions to be answered.

Error is also assigned upon the giving of the following instruction to the jury:

"You are instructed that an agent or broker must, in order to show that he is entitled to commissions from his principal, faithfully carry out the instructions given by the principal. He has no right to depart substantially from such instructions."

That in the abstract the instruction was correct must be conceded; but we think it was so plainly calculated to mislead the jury when they came to apply it to the case committed to their consideration that there was error in giving it. The only respect in which it could be said from the evidence that the instructions of the defendant had been departed from by the plaintiff was that, although instructed not to do so, he had disclosed to N. B. McCreary & Co. the name of his principal in the early part of his negotiations with them. The facts in that connection were these: The defendant, who resided in Kansas City, Mo., was desirous of purchasing a wholesale grocery business in Denver, Colo., and the plaintiff, who resided at the latter place, was conducting preliminary negotiations, under the defendant's instructions, to the end that his desire might be realized. One of these instructions, repeated in several of the defendant's letters, was, "My name must not be used," and another was to obtain for him a statement from the prospective sellers giving in detail the volume of their business, amount of capital used, amount of merchandise usually carried, salaries paid, profits realized, etc. When the negotiations with McCreary & Co. began, they

declined to make such a statement, unless informed for whom it was intended, so they might determine whether he was a responsible party. The plaintiff then, without obtaining the defendant's consent, disclosed his name, and was thus enabled to obtain and transmit to him the statement requested. About a month later, while the negotiations were still in progress, the defendant authorized the disclosure of his name, and still later went to Denver, and, as it was previously understood he would do, took up the negotiations himself and carried them to completion, availing himself of the results obtained by the plaintiff, and expressing satisfaction therewith. There was no evidence that in prematurely disclosing the identity of his principal the plaintiff was actuated by any purpose other than that of obtaining the statement covered by his instructions, or that the disclosure operated prejudicially to the defendant or advantageously to McCreary & Co. In these circumstances, we think the plaintiff's departure from the instructions of his principal was so unsubstantial, so devoid of any imputation of bad faith, and so plainly free from resulting injury to his principal, that it did not affect his right to recover for his services, if he was otherwise entitled to recover. Story on Agency, § 331; Hinton v. Coleman, 76 Wis. 221, 45 N. W. 26; Veasey v. Carson, 177 Mass. 117, 58 N. E. 177, 53 L. R. A. 241. The jury, however, could not well have regarded the court's instruction otherwise than as committing to their judgment the question of whether there was such a departure from the instructions of the principal as to disentitle the agent to compensation for his services.

It is said that the evidence was so overwhelmingly in favor of the defendant that, notwithstanding the matters here considered, no jury would have found for the plaintiff; but of this it is enough to observe that, while the evidence for defendant was strong and persuasive, there was yet such a conflict between it and the evidence for the plaintiff as to entitle the latter to a submission of the issues to the jury.

The judgment is reversed, with a direction to grant a new trial.