PENNSYLVANIA R. CO. v. BUCKLEY.

(Circuit Court of Appeals, Third Circuit. January 10, 1914.)

No. 1780.

TRIAL (§ 252*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

In an action to recover for an injury received by plaintiff while a passenger on defendants' railroad train by reason of the breaking of a switch which caused the car in which she was riding to run into a switch track, where it came into collision with other cars, where it appeared that the breaking of the switch was due to a latent defect in the iron not visible on the surface; that the switch was new, of an approved pattern, and came from a skilled maker; and that it had been inspected and tested but a few minutes before; it was error for the court, in instructing the jury that the liability of defendant depended on the adequacy of the test made by the inspector, to permit them to find that it was not adequate unless he tapped the parts with a hammer, where there was no evidence that such a test had ever been applied, or should be applied in railroad practice, but the only evidence on the subject tended to show that the test actually made was the usual and proper one.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

At Law. Action by Rose Turner Buckley against the Pennsylvania Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

Theodore Strong, of New Brunswick, N. J., for plaintiff in error. George M. Shipman, of Belvidere, N. J., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. On January 20, 1912, the plaintiff (a married woman living with her husband) was a passenger on a train operated by the Pennsylvania Railroad Company. The train was composed of an engine and four cars, and was running through a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rural part of Northern New Jersey at an ordinary speed—from 20 to 25 miles an hour—when she was severely injured by an accident that took place under the following circumstances:

At Kent's Crossing a siding connects with the main line. The switch had been manufactured by the Pennsylvania Steel Company, was of approved pattern, and was nearly new. The engine and one car passed the switch, keeping to the line; but the three remaining cars turned into the siding, where they collided with a heavy steel car. The plaintiff was injured by being thrown violently against a seat. Immediate examination of the switch disclosed a broken lug or crank—an inconspicuous but important part of the mechanism—and disclosed, further, that a small latent defect existed, such as might occur in the process of casting. This defect was not visible on the surface of the lug, but showed itself on the edges of the broken metal.

The morning was very cold, and the low temperature may have had something to do with the break. There can be little doubt concerning what took place. The vibration of the heavy engine, the latent defect, and perhaps also the influence of the cold, combined to break the lug and then to jar the points of the switch out of place, thus deflecting the last three cars into the siding. The plaintiff did not contend, and there was no evidence, that the switch had been left open. On the contrary, it had been inspected a few minutes before the accident; and the testimony of the inspector—that he had moved the switch backwards and forwards, had relocked it, and had gauged the track—was corroborated by the undoubted fact that the engine and the first car must have found the points in proper position.

The case was carefully tried, and the jury were adequately instructed upon almost every question. But the learned judge fell into error in one particular that was crucial. There being no doubt that the plaintiff was injured while she was a passenger, and that her injury was due to a defective appliance of transportation, a presumption of the carrier's negligence arose immediately, and required explanation. The explanation was offered, and in several respects it was certainly sufficient. It showed that the switch was new, was an approved device, and had come from a skilled maker. It also showed a very recent inspection, and, if this inspection were adequate, if it measured up to the standard of care imposed upon the carrier, nothing more could be demanded. The defendant could not be held liable simply because an accident had been caused by a latent defect, if it had performed every duty imposed by law. The case turned therefore upon the adequacy of the inspection, and this was recognized by the trial judge. He correctly said to the jury:

"It is a question of fact for you to say whether, under all these circumstances that now confront you in the consideration of this question, and that confronted this examiner, tester of the switch, whether upon that occasion he made that practical test which this high regard for the safety of passengers, of which I have spoken, required. If he did, and if you are satisfied that he did, and are further satisfied that that lug broke either because of that latent defect, or because of the pressure that was exerted upon it by this locomotive passing over it upon that occasion, then my charge is that you must find for the defendant, because it is not chargeable with latent defects which could not be observed or discovered by applying the ordinarily accepted tests."

But what were "the ordinarily accepted tests"? It cannot be said that these may be discovered by turning to the stock of common knowledge; the subject is one about which a court and jury need instruction from competent witnesses having knowledge of the usual method, or of the proper method, of inspecting a switch. But on this matter the plaintiff offered no evidence whatever, while the defendant's evidence tends to prove the adequacy of the test that was actually made. No other information was given; nevertheless—apparently influenced by the suggestion of counsel in argument—the learned judge instructed the jury to apply a test that had no support in the evidence; and indeed he made the verdict depend upon the presence or absence of a single act. He had previously used the following language:

"Merely looking at that lug would not disclose that kind of a defect, as you can very well believe. The question arises, however, if it was the cause of the derailment, whether it could have been observed by any proper test that this man could have made on that occasion, such, for instance, as using a hammer, tapping it with a hammer, as has been suggested in the argument here, whether that would indicate any unsoundness."

And a few sentences afterward, in still more precise words, he went on to make the defendant's liability depend altogether on the point whether a hammer should have been used. After the words "ordinarily accepted tests," quoted above, he immediately added:

"If, however, you find that that was not a proper test to make [that is, moving the switch, etc.], and that the tapping of those parts with a hammer would have discovered a defect, then of course the defendant company cannot be absolved. But if you further find that a test of that nature would not have revealed or disclosed that defect, then it would be absolved."

We express no opinion about the propriety, or the severity, of such a standard of duty. The point here is that the record does not contain a word of evidence to show that such a standard had ever been applied, or should be applied, in railroad practice; and, without evidence to that effect, the jury should not have been allowed to base their verdict on what could only be conjecture. In our opinion this erroneous instruction was of the utmost importance, and requires us to reverse.

We may perhaps suggest, also, that, if a second trial take place, the New Jersey decisions seem to lend weight to the judge's evident misgivings about allowing a married woman, living with her husband, to recover a physician's bill as part of her damages for a personal injury—at all events, unless there be affirmative evidence of her intention to charge her separate estate.

The judgment is reversed, and a new venire is awarded.