## BURRAS v. CUDAHY PACKING CO.

### (Circuit Court of Appeals, Eighth Circuit. February 5, 1916.)

### No. 4349.

1. MASTER AND SERVANT ⬤⟾286(18)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an employé's action for injuries, due to the fall of an elevator, evidence *held* insufficient to make a question for the jury as to whether the elevator cable had become so worn and weakened by use prior to the accident as to make it unsafe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1025; Dec. Dig. ⬤⟾286(18).]

2. MASTER AND SERVANT ⬤⟾286(18)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an employé's action for injuries, due to the fall of an elevator, evidence that the elevator was not equipped with a speed governor safety device required by statute did not make a question for the jury as to the employer's negligence without any evidence as to how such a device operated or whether or not it would have prevented the elevator from falling, where it was not claimed that the rule of res ipsa loquitur applied.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1025; Dec. Dig. ⬤⟾286(18).]

3. MASTER AND SERVANT ⬤⟾265(2)—ACTIONS FOR INJURIES—BURDEN OF PROOF.

In an employé's action for injuries, the burden of proof was on plaintiff to establish by a fair preponderance of the evidence that the employer was negligent in the particulars alleged in the complaint.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 878, 895, 896; Dec. Dig. ⬤⟾265(2).]

In Error to the District Court of the United States for the District of Nebraska; Thos. C. Munger, Judge.

Action by Joseph Burras against the Cudahy Packing Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Norris Brown, of Omaha, Neb. (Irving F. Baxter, of Omaha, Neb., on the brief), for plaintiff in error.

J. C. Kinsler, of Omaha, Neb., for defendant in error.

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge. Burras sued the company to recover damages for personal injuries received by him while in its employ, and which he alleged were caused by the negligence of the company. The trial court at the close of all the evidence directed a verdict against him. It is assigned as error that the court erred in so ruling.

The undisputed evidence showed that Burras at the time of the accident was an employé of the company, and had been since 1900. On the 19th day of August, 1913, he had charge of the overhauling gang in the sweet pickle department of the company in its plant at South Omaha, Neb. He was foreman of about 11 men, who worked on the different floors of that department which was in a building four stories

high. On the morning of the day mentioned he was engaged in the line of his duty in taking a load of meat from the first floor of the building to the fourth floor thereof by means of an elevator which he was operating. One Cikota was with him in the elevator. When the elevator was about 14 inches below the fourth floor the rope which was used to raise and lower the same broke, and the elevator fell a distance of 48 feet. The load of meat which was upon the elevator and which was being elevated weighed 700 or 800 pounds. Burras received his injuries by the fall of the elevator. Counsel for Burras say in their brief:

"Let it be understood plaintiff does not contend that any presumption as to the negligent condition of the rope cable can arise from the lone fact that the elevator fell. This is a suit by a servant against the master based on the negligence of the master, and no one contends for the application in any degree of the rule res ipsa loquitur."

This statement of counsel simply admits a well-known rule of law. We therefore must look outside of the mere fall of the elevator to find any case for submission to the jury. The negligence charged in the petition against the defendant company was (a) that the defendant allowed the elevator to become in bad repair, and to become unsafe and dangerous for use; (b) that defendant company failed to equip the elevator with overhead cables of sufficient strength and size to sustain said elevator; (c) that defendant failed to equip said elevator with a speed governor safety device or with any other protection or guard as required by the revised statutes of Nebraska.

[1] It is claimed by counsel for Burras that the testimony of one Joe Halski made it necessary that the case be submitted to the jury. Said testimony is as follows:

"My name is Joe Halski. I reside in South Omaha and have been working in the sweet pickle department of the defendant company for several years. I know Joe Burras. I heard the elevator crash when it fell. After the accident, I examined the rope cable that holds the elevator. I used a ladder to get on top of the elevator where the runner is on the elevator. I examined the rope. I saw it rubbed through, but I did not see the end of the broken rope. I saw the rope rubbed on the pulley and a lot of rubbish from the rope. It was a thick heavy rope. I saw it was broken because there was a lot of rubbish, but whether it was from the end of the rope or the middle of the rope I did not notice that. I examined it after the accident on the same day, but don't remember whether in the forenoon or afternoon. I noticed the rubbish because the rope was not fully wound around the pulley. There was quite a lot of rubbish. The elevator was not running when I went on the roof to examine the rope. The rope broke and that caused the elevator to fall. I saw it rubbed through on that pulley and a lot of rubbish so I know the rope broke. I saw some rubbish around one of the pulleys on the roof and that is what made me think the rope broke."

The examination of the rope by Halski was after the accident. There was no evidence that the rope had been rubbed, or rubbed through, prior to the accident, and the condition of the rope after the accident is as attributable to the fact of the falling of the elevator as any other cause, so that if the case was submitted to the jury on the testimony of Halski it would be upon the theory that the jury might speculate or guess that the rope had become worn and weakened by use

to such an extent as to make it unsafe prior to the accident and this would not be permissible.

[2, 3] It is next claimed that the evidence is positive that the elevator was without a speed governor safety device. When we come to look for this evidence we find that the evidence consists only in the inference which counsel for Burras claims we must draw from the fact that the elevator fell, the claim being that if there had been a speed governor safety device on the elevator it would not have fallen. We are not informed by the record how a speed governor safety device operates, or whether or not, under the circumstances of this case it would have prevented the elevator from falling. Moreover, the contention of counsel invokes the rule of res ipsa loquitur, which he asserts has no application in this case. The burden of proof was upon Burras to establish by a fair preponderance of the evidence that the company was negligent in the particulars that he mentions in his complaint, and in our opinion he not only failed to sustain the burden of proof, but failed to present any evidence at all, outside of the fall of the elevator. Patton v. Texas & Pacific Railroad Company, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Looney v. Metropolitan Railroad Company, 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564; American Car & Foundry Co. v. Dietz, 203 Fed. 469, 121 C. C. A. 593; American Car & Foundry Co. v. Onuffrey Schachlewich, 229 Fed. 559, —— C. C. A. ——; Peirce v. Kile, 80 Fed. 865, 26 C. C. A. 201; Westinghouse Electric Mfg. Co. v. Heimlich, 127 Fed. 92, 62 C. C. A. 92; Cryder v. Chicago, R. I. & P. Ry. Co., 152 Fed. 417, 81 C. C. A. 559; Armour & Co. v. Harcrow, 217 Fed. 224, 133 C. C. A. 218.

Although it cannot affect the disposition of the case we may properly remark that the company introduced evidence tending to show that the rope elevator cable was purchased from Hooven & Allison, of Xenia, Ohio, of good reputation as rope manufacturers; that the purchase was a recent one; that the rope was a two-inch manila transmission rope of the best grade, and that the company in purchasing the rope relied upon the reputation of Hooven & Allison to furnish the best grade of rope. The company also introduced evidence which tended to show that its rope inspector put the rope on the sweet pickle elevator a week or ten days prior to the happening of the accident; that the rope was new when he put it on the elevator; that it was two inches in thickness, and that on the day the accident occurred he inspected the rope at 8 o'clock in the morning and found it in good order. This evidence was not disputed.

We think the ruling of the court below was right and the judgment below, therefore, is affirmed.