## JAMES STEWART & CO. v. NEWBY.

(Circuit Court of Appeals, Fourth Circuit. April 26, 1920.)

No. 1746.

1. **Master and servant ⊜265(5)—Injury of servant raises no presumption of master's negligence.**

Negligence of the employer is an affirmative fact, to be proved by an injured employé, and the fact of an accident raises no presumption of such negligence.

2. **Trial ⊜420—Error in refusing to direct verdict waived by introduction of evidence.**

Error in overruling a motion for directed verdict, made at the close of plaintiff's case, is waived by the introduction of evidence by defendant.

3. **Master and servant ⊜279(2)—Single act of negligence insufficient to prove incompetency of employé.**

In an action for injury to a servant, where incompetency of a fellow servant is charged, the burden of proving this, and that defendant knew, or with ordinary care should have known, of such incompetency, rests upon plaintiff, and a single act of negligence by one who was experienced and generally competent is insufficient.

4. **Trial ⊜252(1)—Instruction must be predicated on facts in proof.**

An instruction on an assumed state of facts to which no evidence applies tends to withdraw the attention of the jury from the issues actually involved, and is erroneous.

5. **Master and servant ⊜287(7)—Whether negligent employé was acting as vice principal question for jury.**

Where there was evidence tending to show that the breaking of a boom on a scow when being used to raise a heavy timber from a pier, by which a workman on the scow was injured, was due to the improper placing of the scow by the foreman in charge, whether the master was liable for failing to furnish the servant with a safe place to work *held* a question for the jury, dependent upon whether, on the facts shown, the foreman in placing the scow was acting as a vice principal and performing a nondelegable duty of the master.

6. **Appeal and error ⊜1053(1)—Error in receiving incompetent and prejudicial evidence not cured by final exclusion.**

Where on trial of an action against an employer for injury to an employé, plaintiff was permitted to introduce evidence, subject to objection, that defendant was protected against liability by insurance, the exclusion of all such evidence at the close of the trial *held* not to have cured the error in its reception.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Action by L. L. Newby, administrator of the estate of Oscar C. Sawyer, deceased, against James Stewart & Co. Judgment for plaintiff, and defendant brings error. Reversed.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Leon T. Seawell, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for plaintiff in error.

Edward Walbridge, of Norfolk, Va., for defendant in error.

Before PRITCHARD and KNAPP, Circuit Judges, and WATKINS, District Judge.

WATKINS, District Judge. This action was begun by Oscar C. Sawyer for injuries sustained while working for James Stewart & Co., a corporation conducting a general contracting business, and which was, at the time of the accident complained of, engaged in building a pier in the waters of Hampton Roads, near Sewell's Point, Va. The accident occurred on July 26, 1918. After the declaration was filed, and before the trial of the case, Sawyer died in consequence of his injuries. His administrator was substituted as plaintiff, and recovered a verdict of $10,000. At the time of the accident plaintiff in error had in its employment several hundred men under the direction of its general superintendent, J. H. Halpin, a man of about 30 years' experience in construction work. The workmen were divided into squads or gangs, each under the control of a gang boss; the one in which Sawyer worked being under the direction of Gustav A. Erickson, a man of about 11 or 12 years' experience in construction work. This gang was engaged in operating a certain floating Batter pile driver and pile engine, which were then being used in lifting and placing in position heavy timbers. Erickson had no power to employ or discharge the laborers under him. The engineer had had about 23 years' experience around engines. The Batter pile driver is described in the declaration as consisting of—

"a high frame, with a large beam, or leads, and also having a jibboom connected therewith; also certain bolts, pulleys, belting, and shafting, and apparatuses and appliances, and the same was operated by said pile engine, propelled by means of steam and electricity, having the power to raise to a height a large beam or pole, to which beam is attached a heavy mass of iron, and then dropping the same upon a pile, driving it into the ground; that the said jibboom attached to said pile driver was used to lift heavy masses of timber, poles, beams, planks, and to place same where needed."

The jibboom, which is frequently referred to in the evidence as the gin pole, was an upright piece of timber, used sometimes to pull the piles into place for driving, and sometimes as a derrick for handling material. It was on the same order as a derrick, but was stationary, instead of having a swing, as a derrick. It was estimated in the testimony to be about 50 to 65 feet in length, 8 or 9 inches in diameter at the top, something over a foot in diameter at the bottom, and approximately 12 inches in diameter at the point where it broke. This gin pole stood alongside the Batter, and a cable ran through and over a block, with loose ends extending from the block, so that it could be moved up and down to the point desired. The uncontradicted testimony showed that the gin pole was of sufficient strength, with proper use, to lift a weight of over 3,000 pounds, that it had been in use for several months, and that during this time it had constantly been used in lifting timbers of this weight.

At the time of the accident certain heavy timbers, about 24 feet in length, had been placed alongside the docks. The appliances mentioned were loaded on a floating scow, or barge, and it was the custom and proper method of operation that this scow should be moved from time to time, so that, when the timbers were lifted, the jibboom should be opposite the center of each of them, in order that the strain of the lifting should be straight over the pole, and not at an angle. The placing of the scow in proper position for each lift was in charge of Erickson, the gang boss, and it was his duty, after seeing that each piece of timber was properly hooked for the lift, to signal the engineer, who then applied the power and started his engine. Sawyer, at the time of the accident, was engaged as a timber handler, and was at one end of the pile driver, picking up some wire. In attempting to raise one of the timbers, which was 12 inches by 12 inches, and 24 feet in length, and which weighed from 900 to 1,000 pounds, there is testimony to indicate that the scow had not been placed in proper position, that is to say, it had not been moved so that the jibboom should be opposite the center of the timber, and, in consequence thereof, that this piece caught under some other heavy pieces, and this added weight, coupled with the fact that the pull was at an angle, instead of in a straight line, caused the gin pole to break at a distance of some 15 or 20 feet from its top, and the broken piece fell upon Sawyer, crushing and injuring him so seriously that his death resulted after several months of suffering.

The specific negligence charged in the declaration was: First, failure to provide competent, skillful, and experienced persons to operate the pile driver, pile engine, and other appliances; second, failure to provide a reasonably safe and proper place to work; and, third, failure to furnish and maintain safe machinery and appliances. In his evidence in chief, the defendant in error produced no testimony as to the negligence complained of, further than evidence of the fact that the gin pole broke and caused the injury.

At the conclusion of this testimony, plaintiff in error moved for a directed verdict, which was refused. Thereupon a number of witnesses were introduced in its behalf. They testified, among other things, that the gin pole had been properly selected and was suitable for the purpose for which it was intended to be used; that the engine, machinery, and appliances were without defect; that the engineer and foreman were competent, safe, and experienced persons; and that proper inspections were had. None of this testimony was contradicted. In an attempt to show how the accident occurred, plaintiff in error introduced witnesses whose testimony tended to show that the accident was caused, as above stated, by failure to move the scow into proper position, and that the accident was due to the timber being caught under other heavy timbers and the lift being attempted at an angle; these two facts causing such a strain on the gin pole as to result in the break. At the conclusion of all the testimony, plaintiff in error renewed its motion for a directed verdict, which was again refused.

During the progress of the trial the attorney for the defendant in error, over objection of opposing counsel, repeatedly attempted to

prove that plaintiff in error was protected by insurance, and that the Accident Insurance Company was liable for whatever damages might be recovered in this case. Having reserved his decision, the presiding judge, at the conclusion of all the testimony, excluded all evidence as to the accident insurance. A number of letters regarding the liability of the Accident Insurance Company were offered in evidence by the defendant in error, but were excluded by the presiding judge, who certifies, in signing an exception thereto, that he did so, believing that the trend of authority on the subject required the exclusion of these papers, and that he did not mean, in so doing, to express his individual views regarding the propriety and right of having such papers in evidence.

[1] The first assignment of error relates to refusal of the motion for a directed verdict. Had plaintiff in error rested its case upon the testimony in chief of the complainant, this motion would have been meritorious, because no evidence of negligence had then been produced, except the mere fact that the gin pole broke and caused the injury. The law is settled beyond controversy that such proof alone was not sufficient to charge the master with liability. "The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employé to establish that the employer has been guilty of negligence." Patton v. Texas & P. R. R. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Texas & Pacific Railway Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; Dixie Peanut Co. v. Lewis, 118 Va. 577, 88 S. E. 72; The Montcalm (D. C.) 249 Fed. 760; Burras v. Cudahy Packing Co., 230 Fed. 596, 144 C. C. A. 650. Upon what ground the motion was refused at the conclusion of complainant's testimony is not specifically stated. It is apparent, however, that the motion must have been refused on the ground that there was some evidence to go to the jury upon the question of defective appliances. That this was the opinion of the court is shown by what was said in signing the first bill of exception, wherein, commenting on the charge as to fellow servants, it was stated that this instruction should doubtless have been qualified, "having regard to the inapplicability of that doctrine, if the jury should have found the fact that the injury arose by reason of the defective appliances of the defendant."

[2] However, any right which the plaintiff in error may have had, as to a directed verdict in the first instance, was waived when it undertook to produce testimony on its own behalf to disprove the acts of negligence charged against it. Its right then became dependent upon all the testimony submitted at the trial. Silsby et al. v. Foote, 14 How. 218, 14 L. Ed. 394; Wilson v. Haley Live Stock Co., 153 U. S. 39, 14 Sup. Ct. 768, 38 L. Ed. 627; Runkle v. Burnham, 153 U. S. 216, 14 Sup. Ct. 837, 38 L. Ed. 694; Hansen v. Boyd, 161 U. S. 397, 16 Sup. Ct. 571, 40 L. Ed. 746; American Locomotive Works v. Thornton, 259 Fed. 409, 170 C. C. A. 381.

[3] As will be shown later on in this opinion, there was sufficient evidence at the conclusion of the testimony to go to the jury upon the question of whether the master furnished a reasonably safe place for

the servants to work. A new trial, however, must be ordered for the reason that, under the instructions of the court, the jury could not have held the master liable without basing its verdict, either upon the charge that the appliances were defective, or that the master negligently failed to furnish reasonably competent, safe, and skillful servants to operate the machinery and appliances. As shown above, there was no evidence upon which negligence could be predicated as to appliances. The only evidence of unskillful, negligent, or unsafe servants was that which tended to show that Erickson, the gang boss, failed in the one instance to move the scow into proper position. It is uncontradicted that he was an experienced and competent man, and there is nothing to show that he had ever before been careless, or that the master knew, or had reason to suspect, that he was an incompetent or unsuitable man for his position. One act of negligence on the part of an employé under such circumstances is not sufficient to charge the master with liability in employing him. 2 Thompson on Negligence, 1054; 26 Cyc. 1297, note 91; Spring Valley Coal Co. v. Patting, 86 Fed. 433, 30 C. C. A. 168; Hunter v. Alderman, 89 S. C. 502, 71 S. E. 1082. Where incompetency of a fellow servant is charged, the burden of proving this is upon the complainant, and it must be shown that the defendant knew, or with ordinary care could have known, of such incompetency. The presumption is that the employer has done his duty in this respect. 18 R. C. L. 728; Wabash Ry. Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605.

The second assignment of error relates to the court's instructions to the jury upon the law of the case, and, among other things, it is charged that the instructions were erroneous in so far as they related to safe appliances and experienced and competent employés, for the reason that there was no evidence adduced to support the charge of negligence in that respect. The jury was instructed as to the duty of the defendant to provide reasonably safe and suitable appliances and to provide a skillful, competent, and experienced man to manage, use, and control the Batter pile driver and engine, and was instructed that if it should find that the defendant was guilty of negligence in this respect, and that the injury was due to such negligence, a verdict should be rendered for the plaintiff.

[4] As shown above, there was no evidence in these particulars upon which the liability of the plaintiff in error could have been predicated, and the charge, therefore, was in that respect misleading and erroneous. "An instruction not based on the evidence is erroneous and should not be given." Clarke v. Kownslar, 35 U. S. (10 Pet.) 657, 9 L. Ed. 571. "Charges to juries must be confined to the issues and must be predicated on facts in proof." Wilmington Star Mining Co. v. Fulton, 205 U. S. 60, 27 Sup. Ct. 412, 51 L. Ed. 708; Pennsylvania R. Co. v. Buckley, 210 Fed. 268, 127 C. C. A. 86; Stanley v. Beckham, 153 Fed. 152, 82 C. C. A. 304; Bishop Co. v. Dodson, 152 Fed. 128, 81 C. C. A. 346; Citizens' Gas & Electric Co. v. Nicholson, 152 Fed. 389, 81 C. C. A. 515. "An instruction upon an assumed state of facts, to which no evidence applies, tends to withdraw the attention of the jury from the issues actually involved, * * * and thus to reach

an erroneous result." Railroad Co. v. Houston, 95 U. S. 703, 24 L. Ed 542; Railroad Co. v. Blessing, 67 Fed. 277, 14 C. C. A. 394; Northwestern Mut. Life Ins. Co. v. Stevens, 71 Fed. 263, 18 C. C. A. 107; B. & M. Ry. Co. v. McDuffey, 79 Fed. 942, 25 C. C. A. 247.

That the charge complained of must have misled the jury is manifest from the fact that the court further charged "that the engineer in charge of the engine, and the foreman, or boss, of the gang in the operation of the work, were fellow servants," and that if they believed "from the evidence that the accident and consequent injury were caused by the negligence of Erickson, the foreman, or Brothers, the engineer, the defendant (plaintiff in error) is not liable for such acts, and you must find for the defendant." While there is some conflict of testimony as to the actual cause of the accident, the only testimony tending to show negligence sufficient to justify a verdict for complainant was to the effect that the accident was caused by the failure of Erickson to have the scow placed in proper position before making the lift. If, therefore, the jury followed the instructions of the court, as we must presume it did, its verdict must have been predicated upon the assumption that the master had negligently failed to furnish safe and suitable appliances or safe, skillful, and competent fellow servants.

[5] Another charge of error in the second assignment was to the effect that the court erred in instructing the jury as to its duty to furnish a reasonably safe place to work, when the evidence showed that it was a case of the use of instrumentalities, and not a case involving the doctrine of a safe place to work. As has been already shown, there was evidence to the effect that the accident was caused by the failure of Erickson, the gang foreman, to have the scow placed in proper position before attempting the lift. Whether the master was liable for such negligence, if established, is dependent upon whether his act was that of a vice principal or of a fellow servant. The general principles applying to what constitutes the positive or nondelegable duties of a master, and as to what risks are assumed by a servant, have been clearly established and defined, and there is now but little conflict of authority relative thereto. Among other principles that now receive universal recognition are these:

It is the positive and nondelegable duty of the master to furnish its servants with reasonably safe and suitable appliances with which to work, with a reasonably safe place in which to work, with reasonably competent, safe, and skillful fellow servants to work with, and to use reasonable diligence at all times to maintain these conditions. The test is reasonable care or diligence, and the degree of care required depends upon the circumstances of each case. Extra danger requires extra care. Instruction and warning must be given where the hazard of the employment demands it. The skill and constancy of supervision, and the frequency or extent of instruction, inspection, repair, and adjustment required, depend upon the character of the work and the dangers incident thereto. What constitutes due care or negligence, in any particular case, is ordinarily a question of fact for the jury. The master's duty has been characterized as a duty of provision. In its broad and proper sense, it implies, or should imply, not only the sup-

ply of the appliances, place, and persons required, but of reasonably maintaining the safety of the conditions originally required. The master is not an insurer of these conditions, but is responsible for them at all times to the extent that reasonable prudence requires. Where a place has been rendered unsafe by the mere shifting operations of fellow servants in the usual course of the work, an exception occurs. If unexpected contingencies and dangers are brought about by the methods of work adopted by fellow servants, rendering the place unsafe, this will not ordinarily make the master liable; the test being reasonable foresight and prudence. Kreigh v. Westinghouse, 214 U. S. 255, 29 Sup. Ct. 619, 53 L. Ed. 984; Gulf Transit Co. v. Grande, 222 Fed. 817, 138 C. C. A. 243; Cybur Lumber Co. v. Erkhart, 238 Fed. 751, 151 C. C. A. 601; Bennett v. Crystal Carbonate Lime Co., 146 Mo. App. 565, 124 S. W. 608; Dunn v. Great Lakes Dredge & Dock Co., 161 Mich. 551, 126 N. W. 833. But to hold that the master cannot in any instance be chargeable for new conditions, rendering a place unsafe, would be absurd, and the safety which he is charged with providing should not be jeopardized by too nice theoretical refinements.

In the case of Regan v. Parker-Washington Co., 205 Fed. 692, 123 C. C. A. 648, L. R. A. 1915F, 810, there is an interesting discussion of certain conflicts of opinion, regarding the principles by which it can be determined whether one is a vice principal or a fellow servant, and of the final determination of these questions by our Supreme Court. It is certain now that the test is duty, and not rank, and is determined by obligation, rather than authority. Baltimore & Ohio R. Co. v. Baugh, 149 U. S. 383, 13 Sup. Ct. 914, 37 L. Ed. 772; Randall v. B. & O. Ry. Co., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003; Northern Pacfic R. Co. v. Charless, 162 U. S. 359, 16 Sup. Ct. 848, 40 L. Ed. 999; Martin v. Atchison Topeka & S. F. Ry. Co., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051; Northern Pacific R. Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994; Alaska Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390; New England R. Co. v. Conroy, 175 U. S. 334, 20 Sup. Ct. 85, 44 L. Ed. 181; Northern Pacific R. Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; Weeks v. Scharer, 111 Fed. 331, 49 C. C. A. 372; M'Donald v. Buckley, 109 Fed. 290, 48 C. C. A. 372; Baltimore & Ohio R. Co. v. Brown, 146 Fed. 24, 76 C. C. A. 482; Weeks v. Scharer, 129 Fed. 333, 64 C. C. A. 11; Missouri Valley Bridge & Iron Co. v. Walquist, 243 Fed. 120, 155 C. C. A. 650; Union Pacific R. Co. v. Marone, 246 Fed. 917, 159 C. C. A. 188; Atchison, T. & S. F. R. Co. v. Moore, 29 Kan. 632; Mast v. Kern, 34 Or. 247, 54 Pac. 950, 75 Am. St. Rep. 581; 18 R. C. L. pp. 712 to 715, 741 to 743, and 751 to 754. Prima facie all servants in the common employ of a single master are fellow servants. So it has generally been held that a gang foreman in charge of a squad of ordinary laborers is a fellow servant with them, and not a vice principal of the master.

As applicable to the facts of the decided cases, the conclusions reached in this respect have generally been correct. In some instances, however, the language employed has been misleading, and there is

considerable apparent conflict and occasionally some real conflict in the decisions. In some instances the language employed would indicate that gang foremen are fellow servants with their subordinates, irrespective of the scope of their duty. In others the issue has been determined upon the basis of the foreman's right or the absence of his right to employ and discharge. The real test is whether the master has intrusted to such one the limited duty of mere operation on the one hand, or a broader duty involving provision on the other. When one is charged with a nondelegable duty of a master, liability for his negligence thereof exists, if injury is thereby caused to another servant of any rank whatever, superior, equal, or inferior. Since, however, all who enter a common employment are prima facie fellow servants, in order to render the master liable specific testimony must be produced to show that the offending servant is charged with some duty of provision, and not merely the ordinary service of operation. The weight of the testimony in that respect, and the inferences to be drawn therefrom are generally questions for the jury. In determining such questions it may, and often does, become important to consider the rank of the servant. As stated by this court in Russell v. Champion Fibre Co., 214 Fed. 965, 131 C. C. A. 259, a foreman in charge of and controlling workmen is presumed to observe the presence or absence of proper safety appliances, and it is his duty to warn those working under his direction and control of dangers which are not obvious to them. See Northern Pacific R. Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; Consolidated Interstate-Callahan M. Co. v. Witkouski, 249 Fed. 833, 162 C. C. A. 67; Federal Mining & Smeltering Co. v. Anderson, 247 Fed. 472, 159 C. C. A. 526; Alaska Pacific S. S. Co. v. Egan, 202 Fed. 867, 121 C. C. A. 225; Hunter v. Alderman, 89 S. C. 502, 71 S. E. 1082.

The basic fact of all liability of the master is the servant's agency. He acts as it were by power of attorney. If the power is special and limited, the master's liability is limited accordingly; if broad and general, his liability is naturally extended. If the supervision is of such character as to charge the foreman with the duty of inspection, his knowledge becomes the knowledge of the master, and entails an immediate liability which does not pertain to servants of lower order not so charged. The foreman may be charged with the duty of maintenance or repair, in which case, both his knowledge and his duty become the knowledge and duty of the master, so as to require him, not only to exercise reasonable diligence to discover, but also to provide against danger. On the other hand, the servant not charged with such duty has a right to rely upon the master's fulfillment of his obligation. He need not anticipate that the master will be negligent; the law's requirement is an assurance to him that the master has done his duty. Whether the foreman is charged with a nondelegable duty of the master, in a particular case, as above stated, is a question of fact to be determined from all the evidence. If there is no testimony to show such fact, the court should charge, as a matter of law, that the foreman is a fellow servant, because the mere fact that he is a foreman is not sufficient. If the admitted facts show that he is charged with

such nondelegable duty, the court should instruct the jury to this effect. If, however, there is positive evidence, or evidence from which a reasonable inference may be drawn, that he is so charged, however conflicting the testimony, the question should be submitted to the jury. Without further comment, we hold that there was sufficient evidence to go to the jury upon the issue as to whether Erickson was a vice principal or a fellow servant with the injured employé, and as to whether the master furnished a reasonably safe place to work.

[6] The last question in the case relates to the testimony as to the employer's protection by liability insurance. It is true that the testimony was ultimately ruled out. This, however, was not done promptly. Complainant's counsel brought the matter to the attention of the jury almost at the beginning of the trial, and by repeated efforts persistently directed the attention of the jury to it, and it was not until the conclusion of the whole testimony that it was finally excluded. The general rule is that, where inadmissible evidence has been received during a trial, the error is cured by its subsequent withdrawal, or by an instruction of the court to disregard it. Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; Specht v. Howard, 16 Wall. 564, 21 L. Ed. 348; Union P. R. Co. v. Thomas, 152 Fed. 371, 81 C. C. A. 491; Armour & Co. v. Kollmeyer, 161 Fed. 78, 88 C. C. A. 242, 16 L. R. A. (N. S.) 1114; Horsford v. Glass Co., 92 S. C. 260, 75 S. E. 533. "There is this exception to the rule. Where the evidence thus admitted is so impressive that in the opinion of the appellate court its effect is not removed from the minds of the jury by its subsequent withdrawal, or by the instruction of the court to disregard it, the judgment will be reversed." Armour & Co. v. Kollmeyer, supra; Throckmorton v. Holt, 180 U. S. 552, 21 Sup. Ct. 474, 45 L. Ed. 663; Waldron v. Waldron, 156 U. S. 361, 15 Sup. Ct. 383, 39 L. Ed. 453; Horsford v. Glass Co., supra.

Whether the effect of the evidence thus improperly introduced may be subsequently removed by its exclusion and an instruction to disregard it depends upon the character of the evidence. This court must take cognizance of the general recognition among the members of the bar, as well as by the courts, of the harmful effect upon the minds of jurors of such testimony as was here sought to be introduced. The only purpose for which such evidence is presented is to prejudice the jury, and the poison is of such character that, once being injected into the mind, it is difficult of eradication. Where it is allowed to remain during the whole course of a trial, and by persistent unrebuked references is allowed to influence the jurors' consideration of all the other evidence during the trial, the antidote of a final instruction to disregard the testimony is ineffective. The removal of the fly does not restore an appetite for the food into which it has fallen. The exclusion of the testimony should be prompt and decisive, and should leave no doubt, either of the impropriety of the attempt to introduce it, or of the court's condemnation of such attempt. Verdicts cannot be relieved of the danger of criticism as long as there is a basis for the opinion that they have been rendered through the influence of prejudice.

Not a few of our courts have gone to the extent of holding that a

case should be withdrawn from the jury and a mistrial ordered for the mere asking of a question of the character under consideration, on the ground that the effect of it is so harmful that it cannot be removed by the instruction of the court, and that the conduct of counsel in such case is so culpable that he ought not to be permitted to enjoy the fruits of a verdict which might have been influenced by such question. The authorities are overwhelming that such evidence is inadmissible, that it should be promptly excluded, and that the striking out of the testimony when once admitted does not obviate the necessity for a new trial, if the evidence is so impressive that its effect is not removed by subsequent withdrawal or instruction to disregard. To the cases above cited may be added Washington Gaslight Co. v. Lansden, 172 U. S. 541, 19 Sup. Ct. 296, 43 L. Ed. 543; Maytag v. Cummings, 260 Fed. 75, —— C. C. A. ——; Knickerbocker Trust Co. v. Evans, 188 Fed. 550, 110 C. C. A. 347; Chicago, M. & St. P. Ry. Co. v. Newsome, 174 Fed. 394, 98 C. C. A. 1; Levy v. J. L. Mott Iron Works, 143 App. Div. 7, 127 N. Y. Supp. 506; Cosselmon v. Dunfee, 172 N. Y. 507, 65 N. E. 494; Steve v. Bonners Ferry Lumber Co., 13 Idaho, 384, 92 Pac. 363; Walters v. Appalachian Power Co., 75 W. Va. 676, 84 S. E. 617; Herrin v. Daly, 80 Miss. 340, 31 South. 790, 92 Am. St. Rep. 605. The case of Horsford v. Glass Co., 92 S. C. 236, 75 S. E. 533, is directly in point, and the able opinion of Mr. Justice Woods in that case fully sustains the views herein expressed.

Reversed.