Hillsborough,
No. 4945.

ALICE TREMBLAY *v.* JOHN J. DONNELLY & a.

Argued October 3, 1961.

Decided November 30, 1961.

*Craig & Craig* and *Arthur J. Costakis* (*Mr. Costakis* orally), for the plaintiff.

*Booth, Wadleigh, Langdell, Starr & Peters* (*Mr. Peters* orally), for the defendants.

DUNCAN, J. The plaintiff, a widow aged sixty-five when the accident occurred, was the only witness to the events which gave rise to this action. From the plaintiff's evidence the following facts could be found: As she entered the building at the rear, she slipped and fell upon a pear on the porch. It was dark at the time, and there was no light by which the porch could be illuminated. A pear tree on adjoining premises owned by a third party was so situated with reference to the porch that pears would fall upon the pitch roof of an adjoining barn and be deflected to the defendants' porch near the rear entrance.

The accident occurred upon a Saturday evening at about 9:00 P. M. The plaintiff did not see the pear, but felt it with her hand when she fell. Her left ankle was fractured so that the bone projected through the flesh. She was unable to get to her feet, but opened the door and sat upon the bottom stair inside it. She called for help, but no one responded and no one went by. She remained upon the step, expecting the tenant of the first floor rear apartment to return from work shortly after 11:00 P. M.; but when he did not, she crawled on her hands and knees to the second floor. There she was unable to open her apartment door so she remained on the stairway landing until daybreak, when she worked her way back down the stairs and finally attracted the attention of a passerby. Assistance was summoned and she was taken to the hospital.

It was not disputed that she suffered a severe compound fracture of her left ankle with displacement of the foot and "a degree [of shock] associated with this type of injury." She also suffered some loss of blood as evidenced by "a trail of blood the entire length of the staircase" and on the top landing leading to a porch door.

The defendants contend that a nonsuit or directed verdict should have been granted, because there was no evidence that they had notice that the pear was upon the rear porch in season for them to have removed it. *Jakel* v. *Brockelman*, 91 N. H. 453; *Partin* v. *A. & P. Tea Co.*, 102 N. H. 62, 64. Since there was evidence however from which the jury could find that the defendants knew or should have known that pears did fall from the tree upon the porch and could have taken preventive action, it could likewise find that reasonable care required that they should have taken such action. *Papakalos* v. *Shaka*, 91 N. H. 265; *Black* v. *Fiandaca*, 98 N. H. 33, 35; Restatement of the Law, Torts, s. 360. We are likewise satisfied that the evidence did not compel a finding of contributory negligence on the part of the plaintiff in failing to see the pear. *Papakalos* v. *Shaka, supra; Cartier* v. *Hoyt Shoe Corp.*, 92 N. H. 263, 265; *Brosor* v. *Sullivan*, 99 N. H. 305, 308.

The defendants strenuously urge that they were prejudiced by the action of the Trial Court in permitting testimony that the porch was unlighted to be received in evidence over their objection and exception. The plaintiff does not question the proposition that under the law of this jurisdiction a landlord is under no duty to provide lights for common passageways retained in his control, in

the absence of agreement to do so and in the absence of "special dangers . . . because of defective or unusual construction." *Lengas* v. *Resnick*, 87 N. H. 161, 162. See also, *Hawes* v. *Chase*, 84 N. H. 170. In reliance upon this principle the defendants objected to inquiry as to whether there were "any lights on the porch," and whether it was "very dark on the porch at night."

Early in the trial the Court properly declined to exclude such evidence, because of its bearing upon the question of contributory negligence. Following denial of the defendants' motion for a nonsuit, the Court stated: "If there should be sufficient evidence to submit to the jury defective construction of the premises, then I would submit the issue of lighting . . . if the evidence should come in from the defendant, then I would submit the issue . . . . " Finally however, in submitting the case to the jury, the Court instructed them that "there is no duty on the part of a landlord such as these defendants here to light a common passageway or porch such as the one on which the plaintiff claims she fell. You are not to consider lack of lighting as an issue in this case."

The defendants contend that this instruction was inadequate to counteract the prejudice to them arising out of repeated references to lack of light which were permitted to remain in evidence during the entire trial. *James Stewart & Co.* v. *Newby*, 266 Fed. 287, cited in *Emerson* v. *Cobb*, 88 N. H. 199, 201.

The evidence relating to light or lack of it was plainly competent both upon the issue of the plaintiff's contributory negligence, and as evidence of a circumstance to be taken into account in determining the issue of defendants' negligence in failing to prevent pears from falling upon the porch. While the defendants might properly object to use of the evidence as proof of their negligence in failing to provide a light, the evidence was not incompetent, and they made no effort to obtain instructions limiting its use. *Smith* v. *Railroad*, 87 N. H. 246, 254. In this situation it was not error to receive the evidence.

However better practice requires that the Trial Court exclude or limit the use of evidence that a landlord has not provided adequate lighting, unless there is evidence of special danger from defective or unusual construction (*Lengas* v. *Resnick, supra*) or assurance by counsel that such evidence is to be supplied. To the extent that the defendants did not waive their objection by failing to request a limiting instruction, any prejudice inherent in receipt of the evidence was cured by the instruction withdrawing from the

jury the issue of the defendants' failure to furnish lights.   *Sirois* v. *Laquerre,* 103 N. H. 113, 117.

The defendants contend that it was error to deny their motion to set aside the verdict upon the ground that the plaintiff "committed perjury in her testimony regarding her drinking habits and her social habits."

In the course of the trial the plaintiff testified on direct examination as follows:   "Now, you say that you got up . . . around 7:00 o'clock that morning?   A.   Yes. . . .   Q.   Did you visit any clubs? A.   No.   Q.   Do you drink?   A.   No.   Q.   Did you drink that day? A.   No."

On cross-examination, she testified:   "Q.   You don't drink, do you?   A.   No . . .   Q. . . . you wouldn't go out to any club dancing or anything?   A.   I did with my husband when my husband was living.   Q.   Do you now?   A.   No I don't . . .   Q.   You don't like beer?   A.   Well if I happen to be with somebody sometime, but I don't care for it. . . .   Q.   You hardly ever go out at night?   A. No.   I don't . . .   Q.   Doesn't Mr. O'Reilly come to see you?   A. Sometimes I see him about every four or five weeks.   Q.   The reason I am asking you, Mam, is that you say . . . you don't like beer and you only drink it once in a while?   A.   Very seldom. Q.   Therefore there would be no reason . . . you wouldn't be coming home at anytime feeling the effect of drinking, would you?   A.   No."

A witness called by the defendants at the trial testified that prior to the day of the accident he had seen the plaintiff "coming home in such a condition that it was obvious . . . that she had been drinking," and in particular that he "see her come on the porch and . . . her eyes were just about ready to come out of her head." The issue so raised was discussed by counsel in argument to the jury.

With the motion to set the verdict aside, the defendants submitted an affidavit that a witness, Woodin, had been interviewed after the trial and stated that he had seen the plaintiff drinking, and under the influence of liquor.   At the hearing on the motion, however, the witness testified merely that he had seen the plaintiff drinking at a local club early in 1958, on two or three occasions, but that she was "perfectly all right."   Other witnesses called at the hearing on the motion testified to having seen the plaintiff at the same club on Sundays after the accident but prior to the trial, upon occasions when she drank either beer or brandy.   The plaintiff herself was called as a witness and testified that for perhaps a year

and a half before June 1959 she had visited the club about once a week in the company of Mr. O'Reilly and upon occasions had brandy to drink, and beer "very seldom." She granted that at the trial she answered the question "do you drink" in the negative, and explained: "I said I didn't drink when the accident happened, that's what I meant . . . I said no because I didn't drink that day."

In support of their motion, the defendants have relied in both courts upon the rule laid down in *Rasquin* v. *Cohen*, 92 N. H. 440 that upon a motion for new trial founded upon newly discovered evidence, where it appears that a party "testified falsely on a material issue, and the evidence proves, or strongly tends to prove, that the false testimony is dishonest, the verdict will be set aside even if it is not found that a new trial will probably produce a different result." *Id.*, 442.

The instant case is only remotely analogous to the *Rasquin* case. The defendants' motion did not allege that the evidence proffered was newly discovered, the defendants had introduced evidence at the trial calculated to show that the plaintiff did drink prior to the accident, and the evidence offered in support of the motion related solely to her conduct during the period after the accident.

Upon the evidence as a whole the Trial Court could reasonably find that the testimony at the trial which the defendants claimed was false was not upon a material issue, or if material was not dishonest. Moreover the evidence offered in support of the motion was not shown to have been unavailable to the defendants at the time of the trial. See *McGinley* v. *Railroad*, 79 N. H. 320, 321. A finding that they were entitled to have the verdict set aside as a matter of law was not compelled. *Small* v. *Company*, 96. N. H. 265, 268.

Other exceptions preserved by the defendants require no extended consideration. The essence of their sixth request for instructions to the jury was granted when the Court gave a part of it verbatim: "If you do not believe Mrs. Tremblay's story as to how she fell, you should bring in a verdict for the defendant." Their eleventh request was of like purport, phrased in terms of a finding "that the accident happened in some other way than described by the plaintiff."

Their twelfth request sought an instruction that the plaintiff was "bound by her testimony that the porch was clear and had no pears on it at 7 or 7:30 P. M. when she left her apartment on September 22, 1956." By the instructions given, the jury was told

that the defendants might be found liable "if . . . by the exercise of reasonable care or due care [they] could have discovered the [unsafe] condition and the unreasonable risk involved and could have made the condition safe."

It is elementary that the Trial Court is not required to adopt the language of the parties' requests (*Lynch* v. *Sprague*, 95 N. H. 485, 490) and that requests based upon selected portions of the evidence are properly denied. *Descoteau* v. *Railroad*, 101 N. H. 271, 277; *Watkins* v. *Railroad*, 84 N. H. 124, 133. If there were no pears upon the porch when the plaintiff left her apartment, the defendants were not thereby relieved of liability if in the exercise of reasonable care they should have previously taken steps to prevent pears from falling upon the porch, regardless of when they might fall. Moreover the plaintiff asserted no claim contrary to her own testimony regarding the condition of the porch when she left her apartment, so that no occasion for the requested instruction arose.

We find no error presented by the exceptions and accordingly the order is

*Judgment on the verdict.*

All concurred.