CONSOLIDATED INTERSTATE-CALLAHAN MINING CO. v.
WITKOUSKI et al.

(Circuit Court of Appeals, Ninth Circuit.    March 5, 1918.)

No. 2998.

1. MASTER AND SERVANT ⊙103(1)—INJURIES TO SERVANT—DUTY OF MASTER.

It is the nondelegable duty of an employer to furnish sufficient and safe materials, machinery, or other means by which service is to be performed, and to keep them in repair and order.

2. MASTER AND SERVANT ⊙209(1)—INJURY TO SERVANT—ASSUMPTION OF RISK.

A servant does not assume the risks attendant upon the use of defective machinery, or other instruments with which to do his work, unless reasonable care and precaution have been exercised by the master in supplying such as are safe for the purpose.

3. MASTER AND SERVANT ⊙188, 190(9)—INJURIES TO SERVANT—"FELLOW SERVANTS"—"VICE PRINCIPAL."

Whether one servant is a fellow servant of another does not depend upon the particular rank he sustains to that other in the service, but the specific character of the act performed, so a servant discharging the nondelegable duty of the master to furnish safe appliances is a "vice principal" instead of a "fellow servant."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fellow Servant; Vice Principal.]

4. MASTER AND SERVANT ⊙190(14)—INJURIES TO SERVANT—"VICE PRINCIPAL"—SAFE APPLIANCES.

Where a cable used in mining hoist was removed and uncoiled on account of its kinking, the duty of tightening the screw or clutch-bolt for properly adjusting the clutch-band to the drum, so that the hoist could be safely operated, was a nondelegable duty of the master, and a negligent failure of the hoistman, who was under the charge of the master mechanic, to tighten the same, must be deemed the negligence of the master and such hoistman a "vice principal," warranting recovery for the death of a servant resulting from an attempt to use the hoist without tightening the clutch-band.

---

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. MASTER AND SERVANT ⚖══285(10), 286(19)—INJURY TO SERVANT—JURY QUESTIONS.
    Whether the omission to adjust the clutch-band of a hoist in a mine before attempting to use the same was negligent, and whether the omission was the proximate cause of the death of a servant, *held* under the evidence for the jury.

6. APPEAL AND ERROR ⚖══263(1)—EXCEPTIONS—NECESSITY.
    Where raised by motion for an instructed verdict for defendant when the case was finally rested, the question whether negligence asserted was that of the defendant master may be reviewed on writ of error, though no exceptions were reserved to instructions presenting such issue.

7. APPEAL AND ERROR ⚖══1078(1)—FAILURE TO URGE OBJECTIONS.
    Assignments of error not pressed in the brief by appellant need not be considered by the appellate court.

8. MASTER AND SERVANT ⚖══289(38)—INJURIES TO SERVANT—JURY QUESTION.
    In an action for the death of a miner, who, when the hoist on which he was being lowered commenced to fall, grasped a projecting beam in the shaft, from which he slipped and fell, the question of such miner's contributory negligence *held* for the jury.

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action by Bertha D. Witkouski and others against the Consolidated Interstate-Callahan Mining Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

This is an action in damages instituted by the defendants in error, who are the widow and minor children of Charles Witkouski, deceased, to recover for injuries arising from his death, which it is alleged was caused through the carelessness and negligence of the defendant (plaintiff in error here), its agents or employés.

The defendant was operating a mine, and had sunk a shaft some 300 feet in depth from a drift or tunnel. The mechanical appliance for lowering and raising the workmen and materials through the shaft consisted of a hoist provided with a drum, a wire cable, and a cage, bucket, or skip, as it is sometimes called, attached to the cable. For controlling the action of the cable and the movement of the bucket, a device known as a clutch-band was attached to and about the drum, and operated as a brake, according to the tension applied. This clutch-band was adjustable by means of a threaded nut or bolt. On being loosened, it allowed the drum to revolve freely. When tightened, the band served as a brake, which was controlled by a lever operated by a hoistman in the bucket. The movement of the bucket could also be controlled by an independent brake, or by application of the air. The miners worked in eight-hour shifts, consisting of five men each, among whom were a hoistman and a pusher. The duty of the hoistman was to operate the hoist and to lower and raise the bucket. The pusher's function was simply to direct the work and keep the men moving. A new cable had been attached to the hoist, and it became necessary occasionally to unwind it from the drum and then rewind it, on account of its warping and kinking while being used. The shift preceding the one of which deceased was a member had unwound the cable, and, in order to facilitate its movement and make it easier to unwind and rewind it, Mr. Lytton, the hoistman, loosened the clutch-bolt, which relaxed the tension of the brake-band. The shift had nearly completed the rewinding when the deceased's shift came on. The deceased directed that his shift take up the work of rewinding the cable and the operation of the hoist. The rewinding was completed. Lytton, the hoistman of the previous shift, did not tell Egbert, the hoistman of the deceased's shift, that he had loosened the clutch-bolt, and Egbert did not tighten it before attempting to use the hoist. The men thereupon got upon the bucket

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by standing upon the rim thereof, which was the usual way of making descent into the shaft, and the hoistman managing the hoist started to lower the men into the shaft. He had not proceeded far until it was noticed that the cable was unwinding very rapidly, and that the bucket was dropping at an unusual rate. The deceased, becoming frightened, attempted to catch hold of a beam, but was unable to hold fast. He was precipitated to the bottom of the shaft and killed. The hoistman applied the brake, lightly at first but with greater force gradually, and succeeded in stopping the descent of the bucket within about 150 feet from the bottom of the shaft, and no one else was hurt.

One Norman McDonald was the foreman at the mine, and had authority to employ and discharge the men. The pusher of a shift, if dissatisfied with a member of his gang, would send him to the foreman, who would dispose of him in manner as seemed best, either by discharging him or transferring him to another shift.

Edward E. Hughes was the master mechanic, and had supervision over the hoist to see that it was in good and safe repair and condition. In small matters he intrusted the supervision to the hoistman. For instance, Mr. Hughes, when asked the question, "Were you ever called in to tighten up the nuts and bolts?" answered: "Well, not a little, trifling thing like that. The hoistman is supposed to be able, and is able, to take care of those things, and if he wasn't able to do those things he couldn't hold his job there as hoistman, because that is part of his duties." Hughes says, further, that the screw for adjusting the clutch-band could as well have been tightened when the cable had been fully uncoiled, and before commencing to rewind it, as at any time.

There is some contention in the evidence that the shaft upon which the drum was adjusted had become sprung slightly, and that that afforded a necessity for loosening the nut or screw when the cable was being uncoiled; also, that a key in the drum-shaft had become loose, and that that had some influence on the action of the hoist. Eventually, however, and by the instruction, of the court, these matters were rendered wholly irrelevant in the consideration of the jury.

The verdict and judgment being against the defendant, it has prosecuted error to this court.

James 'A. Wayne, of Wallace, Idaho, for plaintiff in error.

Therrett Towles, of Wallace, Idaho, and Plummer & Lavin, of Spokane, Wash., for defendants in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). In the end, the question of prime importance submitted to the jury was whether the defendant was careless and negligent in furnishing the deceased with reasonably safe instrumentalities and appliances with which to do the particular work in which he was engaged. The crucial inquiry revolves about the duty respecting the adjustment of the nut or screw for tightening or loosening the clutch-band. Was the duty a nondelegable one, for the master's discharge for the safety of the workmen, or was it one simply of detail, proper to be left to the workmen themselves, or, we may say, the hoistman, to perform? If the latter, then the act of the hoistman in allowing the bolt or screw to remain loose before attempting to lower the bucket was the act of a fellow servant with deceased, and plaintiffs could not recover. If it was a nondelegable duty of the master, and the leaving of the bolt loosened was the proximate cause of the accident, then the defendant

would be liable, unless it used reasonable care and precaution in making the appliance safe for the men to proceed with their work. The question is so near the margin as to require great care and discrimination in its solution.

[1, 2] It is a doctrine so well settled that it needs but slight reference to authorities that it is the duty of an employer to furnish sufficient and safe materials, machinery, or other means by which service is to be performed, and to keep them in repair and order. The duty cannot be delegated to a servant or other person so as to exempt the employer from liability for injuries caused to another servant by its omission. "Indeed," says the Supreme Court in Northern Pacific R. Co. v. Herbert, 116 U. S. 642, 647, 6 Sup. Ct. 590, 593 [29 L. Ed. 755], "no duty required of him for the safety and protection of his servants can be transferred, so as to exonerate him from such liability." Any attempt, whatever it may be, to delegate such a duty to a person in any rank or employment, is simply to make such person a vice principal. He discharges the master's service, and cannot be reckoned as a fellow servant with the common employé. Nor does a servant undertake to incur the risks attendant upon the' use of defective machinery, or other instruments with which to do his work, unless reasonable care and precaution have been exercised by the master or principal in supplying such as are safe for the, purposes and use to which they are adapted.

[3] It has come to be the settled rule of law also, of the Supreme Court, that the test as to whether one servant is a fellow servant of another is not the particular rank he sustains to that other in the service, but the specific character of the act performed. Says the Supreme Court, in B. & O. Railroad v. Baugh, 149 U. S. 368, 387, 13 Sup. Ct. 914, 921 [37 L. Ed. 772]:

"If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master."

And, referring to the cases of Hough v. Railway Company, 100 U. S. 213, 25 L. Ed. 612, and Northern Pacific Railroad v. Herbert, supra, further says:

"The liability was not made to depend in any manner upon the grade of service of a coemployé, but upon the character of the act itself, and a breach of the positive obligation of the master."

See, also, Mast v. Kern, 34 Or. 247, 54 Pac. 950, 75 Am. St. Rep. 580, where the principle is ably discussed and approved in an opinion by Mr. Justice Bean. It is there affirmed that it is supported by the great weight of authority both in this country and in England. The case of Northern Pacific Railroad v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009, does not conflict with the authorities settling the rule. The question there discussed was respecting coservants engaged in different departments of the service.

[4, 5] Now, it being the duty of the master, the defendant herein, to furnish for the use of its employés a reasonably safe appliance, it may be inquired whether that duty extended to tightening the screw or clutch-bolt for properly adjusting the clutch-band to the drum, so

that the hoist could be safely operated.  It is in evidence that Hughes, the master mechanic, inspected the machinery on the evening previous to the accident.  That would be on the same night as the accident, which occurred at 11 o'clock p. m.  The inspection, however, was evidently made prior to uncoiling the cable and loosening the nut for facilitating the work.  It was necessary, for rendering the operation of the hoist safe, as it subsequently proved, that the nut be tightened again.  Hence it would indubitably follow that the readjustment of the nut was a positive duty devolving upon the master, and, the duty having been intrusted to the hoistman to perform the particular service, he was constituted a vice principal, and was performing the absolute duty of the master.  The necessity in the work for uncoiling and recoiling the cable from time to time, and loosening the nut for its facilitation, was a thing known to the mechanical department, and it was such as required supervision by that department.  The idea that the office of attending to the readjustment of the clutch-bolt was a positive duty of the master is thus reinforced.  So it will be seen that it was not a question of selecting careful and competent fellow servants ˙for doing the particular service, but a question solely of whether the work of the master, the specific work being nondelegable, was carelessly and negligently done, and whether the omission to readjust the clutch-bolt before attempting to use the hoist for descending into the shaft was the proximate cause of the accident.  These questions were for the jury, and not for the court, and were submitted to them by very clear and carefully prepared instructions.  The court went further, and left it to the jury to determine whether Lytton and Egbert, in doing what they did in loosening the clutch-bolt and failing to readjust it, were acting ·in the mechanical department, and were therefore vice principals of the master, or whether they were the fellow servants of the deceased, after precisely explaining to the jury the principle that distinguishes the one class of servants from the other.  We subjoin the instructions of the court respecting the latter inquiry:

"Now then, gentlemen, if from all of the evidence you find that Mr. Witkouski did not have control of the hoist, that he was not charged with the responsibility of keeping it in repair, if he did not have the direction of the hoistman as to what should be done from time to time in seeing that the hoist operated properly, but that he could only direct him in so far as giving him the signals and telling him when the hoist should go up and go down, and how rapidly, and so forth, and further that the hoistman, in so far as the mechanical work of keeping this hoist in condition was concerned, was under the control and direction of the mechanical department, ultimately the master mechanic, then you could not find that the hoistman is a fellow servant with the deceased, and therefore the negligence of the hoistman in loosening this screw and leaving it loose would not be a risk taken by the deceased, and if he was injured as a consequence of such negligence then the plaintiffs here could recover, provided—and here is the limitation upon that—provided Mr. Witkouski did not know or have reason to believe that the screw was loose at the time, and, further, was unable to appreciate the danger therefrom.  Even if he was not to blame, and if no fellow servant of his was to blame, for leaving this screw loose, and yet he knew that it was loose, and, by reason of his experience or what he had been told, or by the use of his own common sense he was able to appreciate the danger, and

still, knowing the facts, and appreciating the danger, he for any reason, owing to his desire to get on with the work, or through recklessness, or for any other reason, went ahead and entered the hoist that evening for the purpose of being carried down, and lost his life, he could not recover, because then he would have assumed that risk. Upon that hypothesis, he knew of the danger, and, knowing of it, he took the chance. No man can, with an appreciation of a danger, go ahead and take the chance, and then recover from the person who is responsible for the peril." ·

The court's attention being called to another part of its instructions, it made some correction, and instructed as follows:

"If you find from the evidence that the witness Lytton, who was the hoistman upon the shift immediately preceding Egbert, and Egbert were under the direction and exclusive command and authority of the master mechanic or general foreman, or both, and that the deceased, and other pushers, as they are called, that is, occupying the same position that he did, with other shifts or crews, and you further find that Witkouski, the deceased, and other pushers, had no authority over or right to give orders to or direct said hoistmen as to matters and things incident to or pertaining to keeping said hoist in a reasonably safe condition of repair and efficiency, and that said Lytton, when he went off shift, left the same in an unsafe condition of repair and efficiency, without notifying the succeeding engineer, Egbert, of such condition, and that such conduct on his part was negligence contributing to or causing the injury, and his act in so leaving the screw and failing to notify Egbert constituted the proximate cause or contributed to the death of the deceased, then you should find for the plaintiffs, unless you further find that Witkouski knew or had reason to believe in the existence of the mechanical conditions which did exist, and which constituted the defective conditions of the hoist, and was further able to appreciate the risk incident to such condition, and notwithstanding such knowledge or information, and such ability to appreciate the risk, attempted to ride down upon the bucket, when the hoist was in such defective condition."

Certain authorities are relied upon for defendant's position, namely, that the readjustment of the clutch-bolt was not a positive duty devolving upon the master, but one co-ordinating with the common employment. These require notice.

Buckley v. Gould & Curry Silver Mining Co. (C. C.) 14 Fed. 833, turned upon the question of whether a man who was operating an engine, the negligent act of whom was the cause of the injury, was a fellow-servant with the party injured. This pertained to a negligent act in operating the engine, not to whether the engine itself was a safe instrumentality for the workmen to use. The case of Hermann v. Port Blakely Mill Co. (D. C.) 71 Fed. 853, is distinguishable because the action was based upon the theory that the place was unsafe, and not upon the negligence of a servant whose duty it was to give warning to the men. The evidence failed to sustain the action upon that theory.

Spring Valley Coal Co. v. Patting, 86 Fed. 433, 30 C. C. A. 168, is a case of the same nature as Buckley v. Gould, supra.

Theleman v. Moeller et al., 73 Iowa, 108, 34 N. W. 765, 5 Am. St. Rep. 663, is evidently out of line, and cannot be regarded as stating the law applicable.

The case of Bradbury v. Kingston Coal Co., 157 Pa. 231, 27 Atl. 400, comes nearer on its facts to the present case. In that case the operator of the hoist engine attempted to stop the further descent

of the cage. The cage had descended only a few feet, and the engineer, instead of putting the lever to the center notch in the ratchet, which would have brought the cage to a standstill, pulled it past the notch, which caused the cage to shoot up rapidly. One of the persons therein jumped out, intending to make a landing on a platform, but. failing in his purpose, was precipitated to the bottom of the shaft and killed. The court held that the engineer was a fellow servant with the deceased, and there was no recovery. It was thought that the upward motion of the cage was the result of an accidental mistake on the part of the engineer in pulling his reverse lever too far, and it was further observed that the accident did not happen as the result of any defect in the machinery. It was contended that a cotter-pin had broken or fallen out of its position through the end of the fulcrum-pin or bolt of the throttle-lever, and that the fulcrum-bolt then worked out of place, and thus the engineer lost control of the throttle valve. The court disposed of the contention by affirming that the dropping out of the pin did not cause the accident; that ordinarily the injury or death resulting from defective machinery was immediately the result of the defective appliance, and therefore was the direct result of the negligence of the defendant; but that, in that case, neither the pin nor the lever which held it in place inflicted any injury upon any one. It is further stated that the dropping out of the cotter-pin only gave occasion for the engineer to arrest the further descent of the cage, which he did, and that what took place after that was only what might have taken place upon any occasion for stopping the cage. Then it is observed that it was the mistake of the engineer which was the proximate cause of the accident. In that operation it was held that the engineer was acting in the capacity of a fellow servant with the deceased, as the preceding cases herein noted hold. The feature which distinguishes that case from this is the dropping out of the pin while the hoist was being operated, a thing wholly unexpected. In the present case the clutch-bolt was loosened, and there was neglect to tighten it again before using the hoist. Here there was a known defect in the appliance, which it was the positive duty of the master to remedy before using the hoist. There was no carelessness in operating the hoist when it was discovered that the bucket was descending too rapidly, for the brake was scientifically applied, and the bucket stopped within reasonable limitations as to time. The damage ensued while there was careful operation of the hoist under the exigencies then present. In other words, the accident did not happen from careless operation of the hoist, but from the neglect to readjust the clutch-bolt. The operation of the hoist was a duty pertaining to a fellow servant with the deceased. The duty of readjusting the clutch-bolt was one pertaining to the mechanical department, and one, as we have ascertained, which was a positive duty of the master. The hoistman in discharging that duty was acting as vice principal and in the stead and place of the master, and in that capacity was not a fellow servant with the deceased.

It is unnecessary to examine other cases cited, as these are truly

illustrative of the distinction between those relied upon and the present case.

It follows that the adjustment of the clutch-bolt after recoiling the cable was something more than a simple detail of the work assigned to the hoistman; it was, as has been ascertained, a positive duty of the master, to be attended to for the protection and safety of the men employed about the operation of the hoist. Nor was the failure to readjust the clutch-bolt a mere transitory danger to which the men on the bucket were subjected by reason of carelessness of coservants.

[6] Objection is interposed by plaintiffs' counsel to the court's examining into the matters hereinbefore discussed at all, upon the ground that no exceptions were saved to the instructions of the trial court wherein the crucial question was involved. We think, however, the question was sufficiently raised on the motion interposed, when the case was finally rested, for an instructed verdict for the defendant. We are therefore not satisfied to dispose of the case upon the technical objection.

[7] There were two exceptions, however, reserved to the instructions: One to the effect that they leave out of consideration the question as to whether or not by virtue of the entire crew being at the time engaged in the common employment of rewinding the cable, they had all become for that time fellow servants employed in the mechanical department; the other relating to the burden imposed upon the defendant to show that the risk was assumed by the deceased. Neither of these objections was pressed in the briefs of counsel, and for that reason we might well disregard them. But the first is fully answered by what we have said touching the main issue, and, as to the latter, we are satisfied that the instructions correctly state the law pertaining to the subject.

[8] One other matter insisted upon is that the deceased was guilty of contributory negligence which was the proximate cause of his death. This was submitted to the jury, and we think properly, for their determination, and they resolved it against the contention, thus determining the issue.

The judgment of the trial court should be affirmed, and it is so ordered.