## FORNO v. COYLE. *

### No. 7384.

Circuit Court of Appeals, Ninth Circuit.

Feb. 25, 1935.

Harry E. Pratt, of Fairbanks, Alaska, and Herman Weinberger, of San Francisco, Cal., for appellant.

John L. McGinn, of San Francisco, Cal., and Robert W. Jennings, of Sacramento, Cal., for appellee.

Before WILBUR and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

The appellee has moved this court to dismiss the appeal and affirm the judgment of the lower court, for the reason that this court has no jurisdiction to proceed herein, in that there is no showing that the value of the matter in controversy exceeds $1,000.

In his affidavit as to the value of the property in controversy, the appellant declared: " * * * The area in conflict * * * constitutes 1.3 acres of the total area of 11.07 acres of my claim, the Poorman Bench, 1st tier, * * * I have been mining my said claim continuously since 1927 and have sunk seven * * * shafts to bedrock and run many tunnels and worked out considerable ground on said claim which

*Rehearing denied April 22, 1935.

has yielded something over $60,000.00 in gold dust to me during that time; one of the last mentioned shafts I sank upon the disputed area; * * * a portion of such disputed area I am informed and verily believe was worked by one Otto W. Kickbush and pay gravels found upon the same; that from my own mining and prospecting on my said claim as aforesaid and from the way the pay streak ran, I am quite certain that the area in conflict above mentioned and as described by the pleadings in the above entitled case is of a value in excess of·one thousand * * * dollars."

This statement stands uncontradicted by any sworn assertion. The appellee concedes that "neither the pleadings nor the record contains any revelation as to the value" of the property, other than the appellant's affidavit, which it is claimed is insufficient to establish the jurisdictional value.

The appellee cites but one case in support of his contention that the appeal should be dismissed; namely, Smith v. Benton, 7 Kan. App. 62, 51 P. 971. In that case the court held that the proof of value was insufficient, but the following paragraph on page 972 of the opinion in 51 P., 7 Kan. App. 62, 63, at once distinguishes that case from the one at bar: "After this case was submitted on the motion to dismiss, but before the decision thereon, by leave of court, the respective parties hereto filed affidavits as to the value of the matter in controversy. The plaintiff in error filed the affidavits of several persons, including himself, that the value thereof was more than $100, and the defendant in error filed the affidavits of other persons stating that the value thereof was less than $100. Neither party gave any reason for their opinion, and said affidavits were merely the expression of opinion of the respective witnesses. From this evidence it is impossible for us to say that the amount or value in controversy affirmatively appears to be more than $100."

In the instant case we have no conflicting affidavits as to the value of the property, and the appellant's sworn statement is more than a mere "expression of opinion," for it clearly sets forth the facts upon which that opinion is based. The uncontradicted affidavit is sufficient evidence of value to establish jurisdictional amount. See Wilson v. Blair, 119 U. S. 387, 7 S. Ct. 230, 30 L. Ed. 441; Davie v. Heyward (C. C.) 33 F. 93; Red River Cattle Co. v. Needham, 137 U. S. 632, 11 S. Ct. 208, 34 L. Ed. 799.

Accordingly, the motion to dismiss the appeal is denied, and we advance to a consideration of the case on its merits.

This is an action in ejectment involving a triangular piece of placer ground containing 1.3 acres. The plaintiff claims this property as a part of Gold Bench placer mining claim. The defendant claims the same as being a portion of Poorman Bench, first tier, placer mining claim.

Defendant's claim to the Poorman Bench, first tier, placer mining claim, is based upon an attempted relocation on June 30 and July 1, 1927, of the Hagan Bench placer mining claim which was originally located in 1913 prior to the location of the Gold Bench placer mining claim in 1916. Plaintiff's claim, therefore, depends upon the location of the mutual boundary line between the Hagan Bench placer mining claim and the Gold Bench placer mining claim.

The testimony adduced on behalf of the plaintiff fixed that boundary line so as to include the triangular piece of ground in question as a part of the Gold Bench placer mining claim, and consequently placed it outside the Hagan Bench claim.

The trial court instructed the jury that "the dispute in the action centers around the location of the downstream (with reference to Poorman Creek) end or side line of the Hagan Bench," and that, "If you believe that the preponderance of the evidence in this case has established that the ground in dispute was a part of the Gold Bench placer mining claim as said claim was originally staked and marked upon the ground and that the plaintiff at the time of the bringing of this action was the owner of said claim, you should find for the plaintiff." These instructions were correct, and were accepted by the parties without objection or exception. The jury, upon this issue thus stated, rendered a verdict specifically finding that the area in question was within the Gold Bench placer mining claim as originally located in 1916. It is not contended that the evidence was insufficient to support the verdict. Thus the issue in the case as location of boundary line was decided in favor of the plaintiff by the jury, and being supported by the evidence is not subject to attack by the defendant, except for errors in the progress of the trial.

The defendant contends that the trial judge misdirected the jury in relation to his affirmative defense. This defense sets up

his claim of title to the disputed area based upon his relocation of the Hagan Bench claim in 1927. While the plaintiff questioned the validity of this relocation, it is clear that if the triangular piece of land in controversy was never a part of the Hagan Bench claim and was a part of his Gold Bench placer mining claim, that the relocation of the Hagan Bench claim by the defendant is wholly immaterial. If defendant properly located the Hagan Bench claim with reference to its original boundaries, he did not thereby encroach upon the plaintiff's Gold Bench placer mining claim. If, on the other hand, in relocating the Hagan Bench claim he set the stakes so as to include in his relocation the triangular piece of land which was already owned by the plaintiff, the relocation to that extent was of no force or effect, even if it be conceded that the location was in other respects valid.

In order to understand the defendant's claim and to show clearly that it is immaterial whether or not the relocation was valid or not, it should be stated that the defendant was advised by the plaintiff that the Hagan Bench claim would be open for location on July 1, 1927, because of the failure of the owner to do the assessment work in the preceding year. Acting upon that advice, the defendant purported to relocate the Hagan Bench claim. He posted four stakes at the four corners of what he believed to be the Hagan Bench claim. Three of these stakes, including the one with the notice of location on it, were driven on the 30th of June. The fourth stake was not driven until the evening of July 1st, at which time the defendant panned some dirt and found gold. Defendant admits that the three stakes driven on the 30th of June were prematurely placed owing to the fact that the land was not open to relocation until noon July 1st. He contends that, inasmuch as the discovery was essential to relocation, unless he adopted the discovery by the previous locator, the discovery of the evening of July 1st and the driving of the fourth stake on July 1st fixed the time of relocation and thus placed it after the lapsing of the original location when the land was open for relocation.

■■ The defendant contends that the court's instructions with reference to the discovery were ambiguous, and that the instructions in effect permitted the jury to conclude that the defendant may have relied upon the previous discovery by the original location of the Hagan Bench claim rather than his own discovery on July 1, 1927. If the land was within the boundaries of the original Hagan Bench claim it was not in the Gold Bench claim, and vice versa. In either event the relocation of the Hagan Bench claim would not affect the plaintiff's right to recover, for the plaintiff was bound to recover on the strength of his own title, and could not recover on the weakness of his adversary's title to the disputed triangle. Plaintiff having established his title to the disputed triangle, the affirmative defense falls regardless of the rights of the appellant under his relocation, and any errors committed in instructing the jury with relation thereto would not be prejudicial.

■■ The appellant contends that the court erred in awarding to the appellee as costs the actual expenses of his witnesses, instead of the per diem and mileage provided for by chapter 38 of the Session Laws of Alaska of 1923, p. 47.

In 1900, Congress passed the following law for Alaska (31 Stat. 332, § 30, 48 USCA § 25) which is now section 389 of the Compiled Laws of Alaska: "In case the law requires or authorizes any services to be performed or any act to be done by any official or person within the Territory of Alaska, and provides no compensation therefor, the Attorney General may prescribe and promulgate a schedule of such fees, mileage, or other compensation as shall be by him deemed proper for each division of the court, and such schedule shall have the force and effect of law; and the Attorney General may from time to time amend such schedule and promulgate the same as amended, and the schedule as amended and promulgated shall also have the force and effect of law."

Under this section the Attorney General of the United States promulgated Circular No. 639, dated December 26, 1916, in which a witness might elect to receive his actual expenses of travel and subsistence "in lieu of all per diems and all mileages, as above provided."

The appellant argues that even though the Attorney General's schedule had the force of law when made, it was subject to amendment "the same as any other law," and that such amendment was effected by the act of 1923. Section 1 of that statute provides that: "The prevailing party may tax as costs * * * witness fee for each day a witness is necessarily absent from his usual place of abode by reason of attendance upon court, with traveling expenses at 15 cents per mile actually and necessarily traveled,"

and that "a party to the action, if a witness, shall be entitled to the same fee and traveling expense as any other witness."

Construing the identical circular of the Attorney General and the identical act of 1923, an Alaska court, in United States v. Cadzow, 7 Alaska 126, 130, said, with reference to the act of 1923: " * * * It will be seen that the use of the word 'may' in the above connection is permissive, and not peremptory, and gives to the prevailing party merely permission to follow the provisions thereinafter contained if he so desires, and if he does not so desire, and does not choose to exercise the permission granted, he is not estopped from claiming what he is allowed in the opening words of the paragraph of the same section, which is a re-enactment in identical language, as before stated, of section 1345, Compiled Laws of Alaska, viz., 'all necessary disbursements, including the fees of officers and witnesses.' "

The appellant also complains that even if the Attorney General's schedule and not the act of 1923 is followed, the appellee should not be awarded his own costs as a witness. The Attorney General's schedule, however, was promulgated under the authority of section 389, which states that in case the law requires, or authorizes any services to be performed by any "official or person," and provides no compensation therefor, the Attorney General may promulgate a schedule fixing fees, etc.

The Attorney General's schedule itself authorizes fees for "witnesses" in general, or "any witness," and does not specifically exclude parties as witnesses from the benefits of its provisions.

Furthermore, we see no reason why the act of 1923, which does specifically authorize parties to receive witness fees, should not be given effect in the instant case. True it is that the decision in United States v. Cadzow, supra, held that the act of 1923 repealed neither the section authorizing the Attorney General to promulgate such a schedule, nor the schedule itself. But there is no repugnance between the schedule and the statute of 1923. The former is silent as to parties as witnesses; the latter in terms allows such parties to receive witness fees. We are not put to a choice as to which pronouncement shall govern us here; we can give effect to both. As to the per diem provisions, the act of 1923 is, as the Alaska court has held, merely "permissive"; as to authorizing witness fees for parties to litiga-

tion, the schedule is silent, while the statute is specific in its sanction.

■ The assignment of error as to costs, set out in extenso in the brief of the appellant, contains intimations of another error as to costs, in connection with the lack of special subpoena for witnesses residing more than 100 miles from the place of trial. The appellant, however, does not discuss this point in his brief; and therefore we are at liberty to disregard it.

In Lee Tung v. United States, 7 F.(2d) 111, 112, this court said: "On the argument it was suggested that the court erred in refusing to instruct the jury as to the effect to be given to evidence of good character; but counsel did not deem the question of sufficient importance to discuss it in his brief, and we do not consider it of sufficient moment to depart from the general rule that such assignments will not be considered. Clark v. United States (C. C. A.) 265 F. 104, 107."

See, also, Consolidated Interstate-Callahan Mining Co. v. Witkouski (C. C. A. 9) 249 F. 833, 840.

■ Finally, the appellant assigns as error the court's award of $500 as attorneys' fees, as part of the costs, in favor of the appellee and against the appellant. The ground of attack is that: "The question of attorney's fee was an issue raised by the pleadings and no evidence was introduced thereon by the plaintiff and no finding made relative thereto by the jury and the court was without power so to do."

Section 1341 of the Compiled Laws of Alaska, which is a part of the Act of Congress of June 6, 1900, 31 Stat. 415–418, provides as follows: "The measure and mode of compensation of attorneys shall be left to the agreement, expressed or implied, of the parties; but there may be allowed to the prevailing party in the judgment certain sums by way of indemnity for his attorney fees in maintaining the action or defense thereto, which allowances are termed costs."

Section 1345 of the same compilation, and a part of the same act of Congress, reads as follows: "A party entitled to costs shall also be allowed for all necessary disbursements, including the fees of officers and witnesses, the necessary expenses of taking depositions by commission or otherwise, the expense of publication of the summons or notices, and the postage where the same are served by mail, the compensation of ref-

erees, and the necessary expense of copying any public record, book, or document used as evidence on the trial."

Section 1345, among others, was amended by chapter 38 of the Act of 1923, Laws of Alaska, supra, as follows: "The prevailing party may tax as costs * * * in the district court only, a reasonable attorney's fee to be fixed by the court."

See Pond v. Goldstein (C. C. A. 9) 41 F. (2d) 76, 81.

The gist of the appellant's argument under this heading is thus stated in his brief: "Thus, as Sec. 1341 C. L. A. permitted certain sums as attorney's fees to be fixed by statute or rule of court, etc., and Chap. 38 S. L. A. 1923 permitted the District Court to fix a reasonable attorney's fee, the two statutes together gave the authority to the District Court to make a District Court rule which would constitute an unalterable amount as reimbursement for the expense of attorney's fee."

By the act of 1923, amending the act of Congress, the Territorial Legislature of Alaska gave the courts the express power to impose "reasonable" attorney's fees, and that what is "reasonable" depends on the circumstances of each individual case. It must be remembered, of course, that 48 US CA § 23 provides in part: "All the laws of the United States passed prior to August 24, 1912, establishing the executive and judicial departments in Alaska shall continue in full force and effect until amended or repealed by Act of Congress; except as herein provided all laws in force in Alaska prior to that date shall continue in full force and effect until altered, amended, or repealed by Congress or by the legislature."

The appellant relies upon a number of cases decided by the Supreme Court of Oregon since 1921. These cases are not in point, since, as the appellant himself observes, they construe section 561 of the Oregon Laws (Olson, 1920), which was almost identical with section 1341 of the Laws of Alaska, supra. Neither section 561 of the Oregon Laws nor section 1341 of the Alaska Laws, however, contains the provision as to "reasonable" attorneys' fees "to be fixed by the court," which is found in the act of 1923, supra.

As to the objection that "no evidence was submitted to the jury" on the question of what was a "reasonable" attorney's fee, we need only point out that no such evidence was necessary. In Globe Indemnity Co. v. Sulpho-Saline Bath Co. (C. C. A. 8) 299 F. 219, 222, certiorari denied, 266 U. S. 606, 45 S. Ct. 92, 69 L. Ed. 464, the court said: "The further point, in connection with the allowance of this [attorney's] fee, that there was no evidence as to a reasonable amount is not open to examination. If it were, we would be inclined to hold that the court is as good [a] judge of reasonableness of attorney fees for services in that court as any one. Any testimony as to what would be a reasonable fee would be in the nature of expert evidence, and, as such, advisory but not binding upon the court."

See, also, State v. Glass, 99 Kan. 159, 160 P. 1145, 1146; Hurni v. Sioux City Stock Yards Co., 138 Iowa, 475, 114 N. W. 1074, 1076; Woodward v. Brown, 119 Cal. 283, 51 P. 2, 542, 63 Am. St. Rep. 108; Hotaling v. Monteith, 128 Cal. 556, 61 P. 95.

We find no error in the record, and the judgment is affirmed.