**MARTIN et al. v. SHEELY et al.**

No. 10665.

Circuit Court of Appeals, Ninth Circuit.

Sept. 20, 1944.

Rehearing Denied Nov. 24, 1944.

Thomas M. Donohoe and John E. Manders, both of Anchorage, Alaska, for appellants.

Warren N. Cuddy and George B. Grigsby, both of Anchorage, Alaska, and E. Coke Hill, of San Francisco, Cal., for appellees.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree declaring illegal and rescinded a contract for the conditional sale of a dairy and milk distribution business, including a herd of dairy stock, which sale also included as a part of the business a lease of certain premises and a grazing permit, and awarding the vendees the return of his purchase price and rentals paid, less certain credits realized from the disposition of some of the herd. The decree ordered the return to the vendors of the remaining livestock and personal property purported so to have been sold and of the possession of the lease and permit land.

The ground of the declaration of illegality is that the herd of cows was infected with Bang's Disease, contagious abortion, a fact known to the appellants, the vendors, when they delivered the herd to the appellees, which diseased cattle the Alaska law made it illegal to sell and for which sale that law imposed a fine. It is not contended that the delivery of the herd under the conditional sales contract did not constitute such a sale.

The law is a health regulation, since the spread of the contagion throughout Alaska herds, with the accompanying deaths of some of the cows and the diminished milk supply of others, might deprive infants and adults alike of the recognized contribution to health which milk is well known to give.

The herd, of which 36 out of a total of 56 were infected, constituted a major part of the property attempted to be transferred and was an essential part of the dairy and milk business in question. We agree that if the sale of the diseased cattle was illegal the entire contract was illegal. The case of Hermanos v. Matos, 1 Cir., 81 F.2d 930, cited by appellants, held no more than that under the Porto Rico law in the sale of cattle, some of which were infected, the vendee could recover only as to the diseased cattle. It involved no question of rescission for the frustration of an entire business sold, of which the herd as a whole was the essential factor.

Appellants contend the section of the Livestock Inspection law prohibiting the sale of the diseased cattle is "unconstitutional" because the title which states the purpose of the Act to be "to prohibit the importation, into the Territory of Alaska, of diseased livestock, to make provision for the eradication of diseased livestock now in the Territory, and to make appropriation * * *." (Chap. 55, Session Laws of Alaska 1919) in fact states two subjects of legislation in violation of the Organic Act of Alaska (Sec. 474, C.L.A. 1933, 48 U.S.C.A. § 76). That Act provides that "No law shall embrace more than one subject, which shall be expressed in its title."

There is no merit in this contention. The Act itself has a single subject, the protection of the people of Alaska from diseased livestock. Its title discloses this in its purposed protection against disease by importation of cattle and disease in the cattle in the Territory. Miller v. Wilson, 236 U.S. 373, 383, 35 S.Ct. 342, 59 L.Ed. 628, L.R.A.1915F, 829; Blair v. Chicago, 201 U.S. 400, 452, 26 S.Ct. 427, 50 L.Ed. 801. The penalizing of the sale of diseased livestock is germane to such protection since sale is an incident of a likely transportation of the diseased livestock with the contagious saliva droppings on the highway or land traversed and its communication to other stock of the vendee, the latter proved in the instant case.

Section 2 of the Act provides that "To own, have in one's possession, sell, transfer, transport, drive or convey, from one section of the Territory to another, animals or livestock of whatsoever kind or character, diseased or infected with the diseases mentioned in Section 3 of this Act, is hereby declared to be injurious to the public health, against public policy, illegal, and punishable as herein provided." [1]

Appellants contend that sections 5 and 6 of the Act providing for the inspection by the Bureau of Animal Industry and quarantining of diseased cattle and their treatment or slaughter indicates that the penalizing by sections 2 and 4 of such ownership and possession concerns ownership and possession after inspection and order to slaughter. Assuming this to be true as to ownership or having in possession, we can see no reason for such a construction of the words penalizing the sale of diseased cattle. It is absurd to say that the Legislature intended the sale to be valid if, before the Bureau's inspectors discover the

---

[1] Section 4 provides "For each evasion or violation of any provision of the three sections last preceding, the * * * party responsible for the evasion or violation, shall be fined not more than Five Hundred ($500.00) * * *."

disease, the owner, knowing its existence, sells the infected cattle to one ignorant of their infection. There is no merit in this contention of appellants.

■ There is abundant evidence supporting the district court's finding that appellant vendors well knew of the existence of the disease at the time of the delivery of the cows and that the appellee vendees did not. Appellees' amended complaint below alleged the facts constituting the illegal sale, the payment of certain installments on the purchase price, the payment of certain rentals on the lease prior to the discovery of the disease in the cattle, and certain other expenditures irrelevant to the decision of the court below. There was a second cause of action for the infection of other cattle of appellees by the cattle received from appellants upon which the district court decided against the appellees, who have not cross-appealed. The prayer was for a declaration of the illegality of the conditional sales contract including the permit and lease, for damages in the amount of $15,000 and for other and further relief.

The relief granted, described in the opening paragraph, included recovery by appellees of the amount of $11,619.69, computed by deducting from the part payments made on the contract and lease moneys paid, in all $14,867.95, the sum of $4,472.20 being the money received from the sale of the carcasses of certain cows slaughtered because of the disease, such sale of the meat being admittedly legal. No interest was allowed for the period during which the appellants had the use of appellees' money.

It is obvious that the court exercised the usual equity power in rescission based upon the illegal action of one of the parties, restoring to the innocent party the amount of the payments made by him and, incidentally, returning to the wrongdoer the possession of the remaining personal property, lease and permit lands.

The appellants claim that full equity has not been done them. They seek in addition the moneys received from the sale of the milk and the calves born of some of the uninfected cows. Obviously, the most they could claim is the net gain, if any, after deducting from the receipts for the calves and disease caused decreased milk supply, all the excess cost of management of the diseased cattle, through an Arctic winter with temperature 30 degrees below zero,

plus the usual cost and expenditures of such a business, plus the interest on the part payments and release moneys paid appellants. No such net gain was asserted or claimed as an offset—probably because it was realized there was none. With their unclean hands, appellants are not entitled to complain of the district court's decision as to the equities involved.

■ Certain rulings on the evidence are assigned as error but no argument is made on them as required by our rule 20(f). We are hence not required to consider them. Forno v. Coyle, 9 Cir., 75 F.2d 692, 695; Barringer v. Lilley, 9 Cir., 96 F.2d 607, 611. However, their inspection discloses no prejudicial error.

The judgment is affirmed.